**Sam MINCHEN dba J & M Construction Company, Appellant,**

v.

**Dr. T. V. ROGERS, Appellee.**

No. 17459.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 24, 1980.

Rehearing Denied March 31, 1980.

C. Wayne Holder, Freeport, for appellant.

Gilbert, Gilbert & Rainey, John R. Gilbert, John D. Rainey, Angleton, for appellee.

Before COLEMAN, C. J., and WALLACE, J.

DOYLE, Justice.

Dr. T. V. Rogers (appellee) instituted this suit against Sam Minchen dba J & M Construction Company, (appellant) to recover damages for breach of a construction contract and for violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.41 (Vernon 1978), et seq. (TDTPA). Appellant filed a cross-action against appellee to foreclose a mechanic's and materialman's lien secured by affidavit pursuant to art. 5453, V.T.C.S. (1978). The court, based upon a jury's verdict, awarded damages to appellee in the amount of $65,373.15 for violation of the TDTPA. Appellee was also awarded attorney's fees in the amount of $7,965 with all court costs taxed against appellant. Appellant's lien was deemed void.

We affirm.

In March 1974 appellee entered into a written contract with appellant to build two beach houses on two lots owned by appellee at Surfside Beach, Brazoria County, Texas. One of the houses was to be a fourplex containing four separate apartments, while the other was a single family dwelling. When the parties entered into this contract J & M Construction Company consisted of a partnership between William Johnson and Sam Minchen. Thereafter, the business and personal relationships of Johnson and Minchen deteriorated to the point that Johnson quit the company, leaving appellant to finish this project.

Pursuant to the construction contract, appellant was to supply all materials and labor and Dr. Rogers was to pay $46,562 for the fourplex and $21,740 for the single house making a total sum of $68,302. The payment schedule was to be one-third draw at the completion of the foundation; one-third for the dry-in (completion of the entire exterior); and one-third for the finished product. Appellee paid appellant approximately $32,500 on the contract prices of these houses. The foundations on both houses were poured and most of the dry-in stage on the single family home was completed. The houses were never completed by J & M Construction Company despite many attempts by appellee to work things out with William Johnson and appellant together, and appellant individually. Finally, appellant refused to continue working on the houses and appellee hired a new builder, Billy Nelson, to complete the buildings.

Appellee brought this suit alleging breach of contract, violation of TDTPA, fraud and deceit, tortious interference with the construction contract and sought removal of a cloud on his title due to the lien filed by appellant. His petition also asked for an

injunction to restrain appellant from selling or transferring any assets owned by him in Brazoria County. After appellee rested his case, appellant moved for a directed verdict, which was denied. The court struck certain of appellee's allegations and the case was tried on the breach of contract action, the TDTPA action, and the action to remove cloud from appellee's title.

In addition to the foregoing, evidence adduced raised the issue of whether this was a "time of the essence" contract. Appellee stated he built these houses as investment rental property, and appellant assured him the houses would be finished in time for the beach season. William Johnson also testified that they could have built these houses in time for the season. Appellant denied any promise of a completion date and the contract is also silent as to a specific date or time period for completion. The evidence adduced showed appellant failed to build these houses in compliance with written specifications, used inferior quality materials and produced poor workmanship.

Trial was to a jury which answered all seven special issues favorable to appellee. From a judgment on the jury verdict, appellant has appealed, asserting twenty-four points of error. Although the jury found for appellee in the amount of $24,000 on the breach of contract issue, the trial court disregarded the finding entirely in rendering its judgment. All of the first five points of error thus become immaterial.

By points of error 23 and 24, appellant complains of the testimony of Laverne Rogers, wife of appellee. Appellant argues the witness was unresponsive in her testimony and this was prejudicial to appellant. There is no authority cited by appellant for his contention, nor does he show how the witness' conduct harmed him except to state:

It is impossible to be forced into a position of objecting to responses in front of a jury, particularly where the witness is a female.

Appellant admits the court continually admonished this witness to be responsive and answer only what she was asked. Appellant chiefly objected to testimony elicited from Mrs. Rogers to the effect that appellant had stolen some building material from the construction site. Appellant argues that the court erred in permitting this testimony to be given because such evidence was totally irrelevant on any issue in this cause and was being utilized solely for the purpose of inflaming the minds of the jurors. To support this contention appellant cites two cases, *Boon v. Weathered*, 23 Tex. 675 (1859) and *White v. Erwin*, 67 S.W.2d 1090 (Tex.Civ.App.-Amarillo 1934, error dism'd), both of which held in effect that the credibility of a witness could be impeached by general evidence only and not by accusations which related to particular facts not specifically set forth in the pleadings of the parties. While these cases hold that a single incident not relevant to the cause of action should be inadmissible, we think the testimony in question is relevant to appellee's allegation of tortious breach of contract. Not only was there evidence that appellant abandoned the job and breached the contract, but also that he purposely interfered with the completion of these structures. The testimony shows that the theft was not the only incident of harassment by appellant, but was one of several continuous acts of interference with completion of the job. Dr. Rogers, Mrs. Rogers, and William Johnson testified that appellant took workmen away from the job, fired two of them, disconnected the electricity to hinder construction progress, threatened Mrs. Rogers and finally took lumber from the construction site, which would certainly interfere with the construction of these houses. In *Hussman v. Leavell & Sherman*, 20 S.W.2d 829 (Tex.Civ.App.-El Paso, judgment affirmed, 32 S.W.2d 643 (Tex.Com. App.1930), the court discussed the relevancy of evidence versus its prejudicial effect on a party and ultimately decided:

Bearing in mind the rule that a party cannot be deprived of the benefit of evidence which is relevant and material because it may also have a tendency to prejudice the adverse party in the eyes of the jury . . . we have decided to

. . . therefore hold that the introduction of the evidence complained of was not error.

Appellant's points of error 23 and 24 are overruled.

By points of error six, seven and eight, appellant complains of the admission of testimony regarding appellant's reputation for truth and veracity in the community.

■ Appellant voluntarily took the stand and testified on his own behalf during this trial. In response to a question regarding the business relationship between himself and Dr. Rogers, appellant responded:

A. From my side, sir, the only thing I ever worried about was maintaining an honest reputation.

Q. Okay, No—as a builder?

A. As a human being, sir.

Q. And a businessman?

A. Yes, sir.

By this testimony appellant placed his reputation in issue and appellee was entitled to offer rebuttal testimony pursuant to Rule 265, T.R.C.P.

In *Boon v. Weathered*, supra, the court examined this exact question in a detailed opinion holding that impeachment testimony is proper as long as it is restricted to the general reputation of the impeached witness for truth in the community where he lives or is best known.

■ If the impeaching witness states that he

is acquainted with the general reputation of the former witness, for truth, in the community where he lives, he may then properly be asked whether that general reputation is such as to entitle the witness to credit on oath; or any other form of words may be used, which do not involve a violation of the cardinal principles, that the inquiry must be restricted to the general reputation of the impeached witness for truth, in the community where he lives or is best known; and that impeaching witness must speak from general reputation or report and not from his own private opinion. I think these conclusions are sound upon principle, and are supported by the most numerous and best considered authorities.

Helen Tatar and Mildred Kieke both testified they knew the general reputation of the impeached witness for truth and veracity in the community where he resided. This is in accord with the Boon case, supra. Appellant would have the court disallow the testimony of Mildred Kieke because she did not live in the immediate community of Surfside, but rather resided in the Brazosport area less than twenty miles away. The witness testified she went to Surfside very frequently, that she had business dealings with appellant there, and knew of his reputation in the community where he resided. The courts of this state have long held that trial courts should be allowed some latitude in determining when testimony of character, reputation or standing of a witness should be admitted. The erroneous admission of such evidence does not constitute a ground for reversal if the adverse party is not prejudiced thereby. *Wells Fargo & Co. v. Benjamin*, 165 S.W. 120 (Tex.Civ.App.-Texarkana 1914, affirmed 107 Tex. 331, 179 S.W. 513 (1915) Appellant's points of error 6, 7 and 8 are overruled.

Points of error 9, 10 and 11 are directed at issues involving the completion of the contract and the measure of damages. We omit any consideration of these points since the trial court awarded no damages on the breach of contract issue.

In points of error 12, 13, 16, 17, 20 and 21, appellant complains of the sufficiency of the evidence to submit special issues one through three and five and six. He further complains of the sufficiency of the evidence to support the jury's findings to such issues.

Appellant first complains there is no evidence to support special issues 1 through 3, 5, and 6. We are here concerned only with issues 5 and 6 pertaining to TDTPA. The trial court's judgment disregarded the jury's findings under issues 1 through 3.

■ Special issue number 5 tracked the TDTPA, asking if appellant made deceptive representations or warranties, and/or committed unconscionable and false acts which

produced appellee's damages. The more than 600 pages of testimony in this case and numerous photographs are replete with evidence of instances of deceptive representations, warranties and unconscionable acts committed by the appellant.

Special issue number 6 asked the amount of damages, if any, to be awarded for violation of the TDTPA as answered in special issue number 5 and any incidental damages as a result of violating the TDTPA. Dr. Rogers and Billy Nelson testified to the amounts expended as a result of appellant's violation of the TDTPA. While these witnesses testified to amounts in excess of $30,000, the jury only awarded $20,000 actual damages and an additional $2,000 for incidental damages. We find the answer to these issues adequately found support in the evidence.

In points of error 14, 15, 18, 19 and 22, appellant complains of the global submission of issues 5 and 6, and the cumulative effects of the many errors of the trial court.

In answer to appellant's contention regarding the submission of global issues, Supreme Court Justice Pope in a 1979 State Bar Institute Paper, "Problems of Broad vs. Narrow Special Issue Submission," *Special Issues*, stated:

> Global submission is an accepted practice by force of Rule 277.

In this article Justice Pope analyzed the important case of *Mobil Chemical Company v. Bell*, 517 S.W.2d 245, (Tex.1974) saying:

> The court was merely stating in its opinion what is found in Rule 277; that is, "It shall not be objectionable that a question is general or includes a combination of elements or issues."

*Members Mutual Insurance Company v. Muckelroy*, 523 S.W.2d 77 (Tex.Civ.App.-Houston [1st Dist.] 1975, writ ref'd n. r. e.) is also discussed in this paper. That case, decided by this court, held that the charge was properly submitted to the jury although the special issue in question asked the jury to determine what damages, if any, resulted from the occurrence in question and then listed seven different elements of damage for the jury to consider.

The rule further provides that it "shall be discretionary with the court whether to submit separate questions with respect to each element of a case or to submit issues broadly." In the case before us the trial court elected to make a broad form of submission and we are of the opinion this was authorized by the rule.

 As stated in the *Muckelroy* case, the court has the discretion to submit broad or narrow issues to the jury and absent a showing of the denial of the rights of appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, there is no abuse of discretion. These points and appellant's remaining points of error are overruled.

The judgment is affirmed.