M.N. DANNENBAUM, INC., Appellant,

v.

Charles H. BRUMMERHOP, d/b/a Charles Brummerhop & Associates, and Charles H. Brummerhop, Inc., Appellees.

No. C14–91–01044–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 3, 1992.

Rehearing Denied Oct. 8, 1992.

---

John C. Allen, Christy A. Hext, Houston, for appellant.

Andrew F. Spalding, Ileana M. Blanco, Houston, for appellees.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

M.N. Dannenbaum, Inc. appeals from a take nothing judgment rendered in its suit against appellees alleging, among other claims, fraud, wrongful appropriation of confidential information, conspiracy, and tortious interference with contractual and business relations. Appellant raises five points of error claiming the trial court erred (1) in disregarding the jury's findings of damages regarding stock fraud, (2) in granting a directed verdict on the claims of common law fraud, tortious interference, and breach of contract, and (3) in submitting an improper jury question on wrongful appropriation of confidential information. Appellees bring seven cross points. We affirm.

Charles Brummerhop was a stockholder and salesman for appellant, Dannenbaum, a process equipment sales company. By letter dated August 12, 1989, Brummerhop resigned from Dannenbaum. In that letter, Brummerhop asked for payment for his stock and of certain trust fund money. Brummerhop also asked that Dannenbaum not invoke the Buy–Sell Agreement, which provided that the corporation had the right of first refusal and if the corporation elected to buy back the stock, the stockholder would be paid five percent immediately and paid the balance over ten years at seven percent interest. Brummerhop received payment of at least part of his funds in the trust fund approximately one week after resigning.

On September 4 or 5, 1989, Brummerhop received a telephone call from his son, who also worked for Dannenbaum, asking Brummerhop to meet with three Dannenbaum employees for drinks. Brummerhop testified that these employees expressed dissatisfaction with Dannenbaum and asked Brummerhop to start a business competing with Dannenbaum.

On September 6, 1989, Brummerhop met with the two other co-owners of Dannenbaum, A.D. Muller and D.W. Burris. Brummerhop agreed to accept cash for eighty percent of his stock and a promissory note for the balance. Muller later called Brummerhop and asked him to sign a non-competition agreement in exchange for payment for the stock. Brummerhop refused to sign such an agreement, but he admitted that at one point during the conversation he may have orally agreed not to compete with Dannenbaum. Brummerhop contended that he did not agree not to compete in exchange for payment for his stock.

On September 6, 1989, Brummerhop received a check for $75,000.00 for 80 percent of his stock and a promissory note for the balance of approximately $18,900.00. On the same day, the three Brummerhop employees who had met with Brummerhop resigned from Dannenbaum. Later that day, Brummerhop contacted Gestra, one of Dannenbaum's suppliers and asked if Gestra would consider allowing Brummerhop to represent the Gestra line of products. Gestra asked for a business proposal from both Brummerhop and Dannenbaum. Gestra subsequently decided to award its business to Brummerhop and terminated its contract with Dannenbaum for cause. Dannenbaum's contract with Gestra allowed Gestra to terminate the relationship at any time upon thirty days notice or immediately for just cause. Gestra and Brummerhop executed a manufacturer's representative contract on September 25, 1989. Gestra let Brummerhop and his associates occupy office space at the Gestra facility on a temporary basis.

On October 17, 1989, Dannenbaum sued Brummerhop and obtained a temporary restraining order. After a hearing on October 31, 1989, the trial court dissolved this restraining order and denied Dannenbaum any injunctive relief. Before this hearing, however, Dannenbaum sent letters to approximately twenty of Gestra's largest customers informing them of the restraining

order, of the possibility that a temporary injunction would soon be in effect, and of their legal counsel's advice that Brummerhop was in violation of his fiduciary duties to Dannenbaum. Brummerhop subsequently counterclaimed against Dannenbaum for malicious prosecution, wrongful temporary restraining order, defamation, breach of contract, tortious interference with business relationships, violations of DTPA and TEX.R.CIV.P. 13.

The case went to trial and after Dannenbaum rested, Brummerhop and Gestra moved for a directed verdict on all of plaintiff's claims. The trial court granted a directed verdict to Brummerhop on the claims of breach of contract, negligent misrepresentation, violation of the DTPA, violation of the Texas Business Opportunity Act, breach of fiduciary duty, conversion, tortious interference with contract and with business relations, quantum meruit, and common law fraud. The trial court refused to enter a directed verdict on the claims of stock fraud, wrongful appropriation of confidential information, and conspiracy. As to Gestra, the trial court granted a directed verdict on the claims of violation of the DTPA, fraud, tortious interference with contract and with business relations, negligent misrepresentation, breach of contract, violations of the Texas Business Opportunity Act and of TEX.BUS. & COM.CODE ANN. § 35.84, breach of fiduciary duty, and conversion. The trial court refused to grant Gestra a directed verdict on plaintiff's claims of wrongful appropriation of confidential information and conspiracy.

After Brummerhop rested, the trial court granted Dannenbaum's motion for instructed verdict as to all of the counterclaims, except for non-payment of the promissory note, which the court found had been established as a matter of law. After Gestra rested, the trial court granted an instructed verdict as to Gestra's counterclaim of groundless claims under the DTPA.

The jury found that Brummerhop committed fraud in the sale of stock and awarded Dannenbaum $100,000.00 in actual damages and $150,000.00 in punitive damages. The jury found no wrongful appro-priation of confidential information by Brummerhop, his corporation, or by Gestra. Brummerhop then filed a motion to disregard the jury findings of actual and punitive damages, which the trial court granted.

Appellant challenges the trial court's grant of appellees' motion to disregard jury findings as to damages. Both appellant and appellees challenge the submission of certain jury issues and the trial court's grant of a directed verdict on certain claims and counterclaims. We turn first to the points of error regarding the jury findings on damages for stock fraud.

■■■■ In point of error one, appellant claims the trial court erred as a matter of law in disregarding the jury's findings of damages regarding stock fraud and abused its discretion in granting a judgment n.o.v. For a trial court to disregard a jury's finding and to grant a motion to disregard jury findings or a motion for judgment n.o.v., the trial court must determine that there is no evidence to support the finding. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex. 1987); *Arch Constr., Inc. v. Tyburec*, 730 S.W.2d 47, 51 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). On appeal, we must consider all of the evidence in a light most favorable to the verdict. If we determine that some evidence supports the verdict, we must reverse and render judgment unless appellees assert cross-points establishing grounds for a remand for new trial. *Basin Operating Co., Ltd. v. Valley Steel Prod. Co.*, 620 S.W.2d 773, 776 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.).

■■■■ The trial court instructed the jury that "the measure of damages is the difference between the value of the stock as represented to the investor and the actual value of the stock at the time it was purchased." Appellant claims there was evidence of a representation as to value. In support of this assertion, appellant points to Brummerhop's resignation letter, in which Brummerhop asked Dannenbaum to calculate the value of his stock by standard bookkeeping methods. Appellant also notes Muller's testimony that Brummerhop accepted the total sum of $94,767.53 for the

stock. Furthermore, appellant contends the stock had no value at the time it was purchased because the stock only had value if Brummerhop's representation that he would not compete was true.

Appellees, on the other hand, argue that there was no evidence Brummerhop made any representation of the value of the stock, as required by the court's instruction, and there was no evidence of damages to Dannenbaum. The evidence shows that Brummerhop's only representation regarding valuation of the stock was his suggestion in his resignation letter that appellant apply "standard bookkeeping methods, i.e., assets less liabilities equals equity with no consideration given to goodwill or other intangibles." There is, however, no evidence of a representation by Brummerhop that the value of the stock was $100,000.00.

Even if we were to find that the representation of a method of calculation was some evidence of a representation of value by Brummerhop, this representation would not support the jury's award unless there was also evidence showing that the stock actually had no value on the date Dannenbaum purchased it. Appellant contends there is evidence that Brummerhop breached the alleged oral promise not to compete and that this competition devastated the business. Appellant's expert, Al Birdwell, testified that the company went "into a tailspin" and was on the "lip of failure." This expert added that sales declined dramatically and the company had not sustained a profit since Gestra terminated the contract. We agree with appellant that this is some evidence that Brummerhop's competition caused Dannenbaum to fail. Furthermore, there is evidence that Brummerhop met with three Dannenbaum employees before the stock transaction occurred and discussed starting a new company to compete with Dannenbaum. Based on this evidence, the jury could have inferred that, on the date of the transaction, Brummerhop intended to compete with Dannenbaum. There is no evidence, however, that Brummerhop had met with Gestra and knew that he would obtain the Gestra contract by the date of the transaction. On the date of the transaction, Dan-

nenbaum had the Gestra contract. There was no evidence showing that Brummerhop would obtain the Gestra contract and that Dannenbaum's business would decline by the date of the stock transaction. There was evidence of these occurrences after the date of the transaction. Jury question 2, however, specifically instructed the jury to deduct the actual value *on the date of the transaction* from the represented value. Thus, we find no evidence supporting an implied finding that the actual value of the stock on the date of the transaction was zero. The trial court committed no error in disregarding the jury's award of $100,000.00. We overrule point one.

■ In point of error two, appellant claims the trial court erred as a matter of law in granting a directed verdict on appellant's common law fraud claim. Appellees respond that the trial court properly granted a directed verdict on this claim because (1) it was based on an alleged unlimited oral promise not to compete that violates the Statute of Frauds; (2) the alleged promise not to compete was void and unenforceable as against public policy; and (3) appellant failed to prove all of the elements of common law fraud.

A trial court properly enters an instructed verdict:

(1) when a defect in the opponent's pleadings makes them insufficient to support a judgment;

(2) when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or

(3) when the evidence offered on a cause of action is insufficient to raise an issue of fact.

*McCarley v. Hopkins,* 687 S.W.2d 510, 512 (Tex.App.—Houston [1st Dist.] 1985, no writ). We must consider all of the evidence in a light most favorable to the party against whom the verdict was directed, disregarding all contrary evidence and inferences. *White v. Southwestern Bell Tel. Co., Inc.,* 651 S.W.2d 260, 262 (Tex.1983).

■ In its petition, appellant alleged that Brummerhop made misrepresentations about his intention to retire, that a cove-

nant not to compete would not be necessary, and that he would continue to assist appellant. Regarding reliance, the evidence showed that appellant paid Brummerhop for his stock in a lump sum plus a promissory note, rather than over ten years as provided in the Buy–Sell Agreement. Because the evidence of reliance related only to the stock transaction, the trial court properly granted a directed verdict as to the common law fraud claim and submitted to the jury only the claim of fraud in a stock transaction. We overrule point two.

In point of error three, appellant contends the trial court erred in granting a directed verdict on the claim of tortious interference. Dannenbaum claims that Brummerhop tortiously interfered with Dannenbaum's contract with Gestra for the sale and distribution of Gestra products. Appellees maintain that appellant failed to present any evidence of tortious interference and that the claim was dependent upon an unenforceable covenant not to compete.

■ The elements of a cause of action for tortious interference with contractual relations are:

 (1) there was a contract subject to interference,

 (2) the act of interference was willful and intentional,

 (3) such intentional act was a proximate cause of plaintiff's damage, and

 (4) actual damage or loss occurred.

*Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 664 (Tex.1990). The evidence showed that the contract between Gestra and Dannenbaum was terminable at will with thirty days notice or terminable for cause without notice. The terminable at will status of a contract is no defense to an action for tortious interference. *Id.* at 666.

■ Appellees argue there is no evidence Brummerhop tortiously interfered with the Gestra–Dannenbaum contract. We agree. The evidence shows that there was a valid contract between Gestra and Dannenbaum. After resigning from Dannenbaum, Brummerhop solicited the Gestra contract. Gestra then solicited proposals from both Brummerhop and Dannenbaum. After determining that Brummerhop had the best proposal, Gestra terminated its contract with Dannenbaum for cause as it was entitled to do under the contract. Gestra had the right under its contract to terminate its relationship with Dannenbaum and Brummerhop had the right to persuade Gestra to exercise that right. *See Kingsberry v. Phillips Petroleum Co.*, 315 S.W.2d 561, 576 (Tex.Civ.App.—Austin 1958, writ ref'd n.r.e.). Merely inducing a party to exercise its right to terminate contractual relations after giving the required notice does not necessarily constitute tortious interference with contract. *See Juliette Fowler Homes*, 793 S.W.2d at 667. We overrule point of error three.

■ In point of error four, appellant claims the trial court erred in granting a directed verdict on the breach of contract claim against Brummerhop. In its motion for directed verdict, appellees argued that this claim was actually an attempt to sue on the alleged oral covenant not to compete which violated the Statute of Frauds. Appellant argues that the Statute of Frauds is inapplicable because Dannenbaum had fully performed its part of the agreement by paying Brummerhop in full for his stock. Appellees argue that appellant did not fully perform because it refused to make the payments required under the promissory note. Appellant further argues that equity should preclude application of the Statute of Frauds because non-enforcement of the oral agreement would itself constitute fraud.

Our review of the record indicates that appellant never raised the argument regarding performance in the trial court. To preserve a complaint for appellate review, a party must have presented a timely request, objection, or motion to the trial court stating the specific grounds for the desired ruling if the specific grounds were not apparent from the context. TEX.R.APP.P. 52(a). Because appellant did not argue in the trial court that its performance precluded applicability of the Statute of Frauds, we hold that appellant failed to preserve this complaint for appellate review. Appel-

lant also failed to raise equity as a defense to the Statute of Frauds and thus, failed to preserve this argument for our review. We overrule point of error four.

In point of error five, appellant claims the trial court erred in submitting an improper jury question and instruction regarding wrongful appropriation of confidential information. The instruction provided:

You are instructed that confidential information means any process, information or compilation of information, formula, pattern, or device which is used in one's business and which gives an opportunity to obtain an advantage over competitors who do not know of or use it. In order to be confidential there must be a substantial element of secrecy; however, secrecy need not be absolute. Matters of public knowledge or of general knowledge in an industry cannot be appropriated as confidential. The personal efficiency, inventiveness, skills and experience which an employee develops through his work belong to him and not his former employer.

Appellant contends the last sentence of this instruction constitutes a comment on the weight of the evidence. Appellant also argues the third sentence is improper in that there can be wrongful appropriation of information accessible on the open market. In support of this claim, appellant cites *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 158 Tex. 594, 314 S.W.2d 782 (1958), *cert. denied*, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 149 (1958) and *Jeter v. Associated Rack Corp.*, 607 S.W.2d 272 (Tex. Civ.App.—Texarkana 1980, writ ref'd n.r.e.), *cert. denied*, 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981).

 We turn first to appellees' argument that appellant failed to preserve any complaint for appellate review because appellant failed to tender a properly worded instruction to the court and have it marked refused. This argument would be correct if appellant were complaining about the trial court's failure to submit an instruction. TEX.R.CIV.P. 278. Appellant, however, is complaining about allegedly defective

sentences within a submitted instruction. To preserve such complaints, Rule 274 requires only that the objecting party point out distinctly the objectionable matter and the grounds of the objection. TEX.R.CIV.P. 274. *See Vela v. Alice Specialty Co.*, 607 S.W.2d 289, 291 (Tex.Civ.App.—Tyler 1980, no writ); *Southwestern Bell Tel. Co. v. Ramsey*, 542 S.W.2d 466, 476 (Tex.Civ. App.—Tyler 1976, writ ref'd n.r.e.). Because appellant did object to the instruction, appellant preserved this complaint for appellate review.

 The trial court has considerably more discretion in submitting instructions and definitions than it has in submitting questions. *Harris v. Harris*, 765 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Although the court must explain legal or technical terms, the court has wide discretion to determine the sufficiency of such explanations. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). The standard of review of a trial court's instruction is that an error in instructing must have caused or can be reasonably calculated to have caused the rendition of an improper verdict. *Minchen v. Rogers*, 596 S.W.2d 179, 183 (Tex.App.— Houston [1st Dist.] 1980, no writ). When an instruction is given, the question on review is whether it is proper. *See Atlantic Mut. Ins. Co. v. Middleman*, 661 S.W.2d 182, 187 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). An explanatory instruction is improper only if it misstates the law as applicable to the facts. *Harris*, 765 S.W.2d at 801. Thus, we must first determine whether the instruction was improper and if so, we must next determine whether such error was harmful.

 Appellant complains that the last sentence of the instruction is an incorrect statement of Texas law. This sentence states: "The personal efficiency, inventiveness, skills and experience which an employee develops through his work belong to him and not his former employer." Appellant cites *Jeter v. Associated Rack Corp.*, 607 S.W.2d 272, 276 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.) in support of its claim that this part of the instruction

was improper. *Jeter*, however, does not involve an instruction regarding an employee's personal skill, efficiency, and inventiveness. Rather, *Jeter* concerns a complaint about a jury question on conspiracy and the court discusses whether there can be misappropriation of information that is readily accessible on the open market. 607 S.W.2d at 275. Because appellant has not offered, and we have not located, any case law holding that this type of instruction is improper, we find no error in the submission of the last sentence of this instruction.

The third sentence is more problematic. In this sentence, the trial court essentially advised the jury that matters of public knowledge or of general knowledge in the industry could not be confidential. Brummerhop testified that an important part of selling is to determine the key personnel in organizations who are responsible for deciding whether to buy your product. Brummerhop noted that he was particularly adept at locating such personnel contacts and could usually locate them in 5–10 minutes. Brummerhop agreed that this information, once obtained, would not be readily disclosed by a company to its competitors. Based on this testimony, appellant argues that this type of information was confidential and the instruction was improper because it advised the jury that this type of information, if accessible in the general industry, was not confidential.

■ Case law regarding misappropriation of confidential information discusses: (1) whether the information was confidential, or (2) even if such information was readily accessible, whether the former employee acquired the information lawfully. *See Mercer v. C.A. Roberts Co.*, 570 F.2d 1232, 1238–39 (5th Cir.1978); *Jeter*, 607 S.W.2d at 275–76; *Brooks v. American Biomedical Corp.*, 503 S.W.2d 683, 684–85 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.); *Crouch v. Swing Mach. Co.*, 468 S.W.2d 604, 606–08 (Tex.Civ.App.—San Antonio 1971, no writ). Even if certain business information is considered confidential, the same information may often be obtained by observation, experimentation, or general inquiry. *See K & G Oil Tool*, 314

S.W.2d at 788. The courts acknowledge that obtaining confidential information in this way is lawful. *See id.* An employer or trade secret owner may protect such information, however, if the competitor gains the information in usable form, escaping the efforts of inspection, inquiry, or analysis, through a breach of confidence. *See id.*

The courts have great difficulty determining whether customer information is confidential and thus capable of misappropriation. The American Law Institute offers the following guidelines regarding a former employee's use of confidential information:

> Unless otherwise agreed, after the termination of the agency, the agent:
>
> . . . .
>
> (b) has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, *written lists of names,* or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. *The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent;*

RESTATEMENT (SECOND) OF AGENCY § 396 (1958) (emphasis added). Thus, the Restatement distinguishes between written customer information and customer names retained in the former employee's memory. Many courts rely upon this distinction in deciding customer list cases. *See Crouch*, 468 S.W.2d at 606 n. 1. Texas courts, however, do not apply the memory rule. Instead, many Texas courts analyze the difficulty in obtaining customer lists in determining whether such lists are confidential information and if the information is readily accessible by industry inquiry, the courts hold that such lists are not confidential information deserving protection. *See Numed, Inc. v. McNutt*, 724 S.W.2d 432, 434–35 (Tex.App.—Fort Worth 1987, no writ); *Allan J. Richardson & Assoc., Inc.*

*v. Andrews,* 718 S.W.2d 833, 836–37 (Tex. App.—Houston [14th Dist.] 1986, no writ); *Brooks,* 503 S.W.2d at 684–85; *Research Equip. Co., Inc. v. C.H. Galloway & Scientific Cages, Inc.,* 485 S.W.2d 953, 956 (Tex. Civ.App.—Waco 1972, no writ); *SCM Corp. v. Triplett Co.,* 399 S.W.2d 583, 586–88 (Tex.Civ.App.—San Antonio 1966, no writ). Other Texas courts focus on the method used to obtain the information. Even if the customer information is readily accessible in the industry, these courts will uphold liability if the competitor actually gained the information in usable form while working for the former employer. *See American Precision Vibrator Co. v. National Air Vibrator Co.,* 764 S.W.2d 274, 276–78 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Jeter,* 607 S.W.2d at 275–76; *Crouch,* 468 S.W.2d at 607–08.

▮ The instruction in this case essentially stated that information one could readily obtain in the general industry could not be appropriated as confidential. Although Texas case law is conflicting, there is authority supporting the statement included in this instruction. *See, e.g., Numed,* 724 S.W.2d at 434–35; *Brooks,* 503 S.W.2d at 684–85. Thus, we cannot say the trial court submitted an improper instruction. We overrule point of error five.

Having overruled appellant's points of error, we now turn to appellees' seven cross points. In cross point one, appellees claim they are entitled to costs under Rule 84 because appellant's appeal is frivolous. Under Rule 84, an appellate court may award each prevailing appellee an amount not exceeding ten percent of the damages awarded to appellees when the court finds that the appellant brought the appeal for delay and without sufficient cause. TEX. R.APP.P. 84. We decline to find that appellant brought this appeal for delay and without sufficient cause and we overrule this cross point.

In cross point two, appellees claim the trial court erred in submitting questions 1 and 2 based on an unenforceable agreement. In cross point three, appellees contend there was no evidence or insufficient evidence to support the jury's answer to question 1. In cross point four, appellees claim there was insufficient evidence to support the jury's answer to question 2. Because we have upheld the trial court's judgment disregarding the jury's award of damages under question 2, we need not address these points.

▮ In cross point five, appellees claim the trial court erred in submitting question 3 regarding Brummerhop's knowledge of the falsity of his misrepresentation. Because we have upheld the trial court's judgment disregarding the jury's award of actual damages under question 2, we must also uphold the trial court's decision to set aside the jury's award of punitive damages under question 4. *See Bellafonte Underwriter's Ins. Co. v. Brown,* 704 S.W.2d 742, 745 (Tex.1986). Therefore, we need not address the jury's finding regarding the knowledge necessary to support a punitive damages award.

In cross-point six, appellees contend the trial court erred in admitting the testimony of Al Birdwell, appellant's expert witness, and his report, admitted as plaintiff's exhibit 145. We need not address this point since we have upheld the trial court's judgment favoring appellees.

Finally, appellees assert in cross point seven that the trial court erred in granting a directed verdict on appellees' counterclaim for defamation. After Brummerhop obtained the Gestra contract and Gestra terminated its contract with Dannenbaum, Dannenbaum sent letters to the Gestra customers stating that Dannenbaum's legal counsel had advised them that Brummerhop was in violation of his fiduciary duties to Dannenbaum, that a temporary restraining order had been issued to prevent Brummerhop from contacting the Gestra customers, and that there was a great likelihood that a temporary injunction would soon extend Brummerhop's inability to contact these customers. Based on the language in these letters, appellees brought a counterclaim against appellant for defamation.

▮ Liability for libel exists where a party publishes false, defamatory written or printed material that "tends to injure the reputation of a living person, exposing him

**634**

to hatred, contempt, ridicule, or financial injury, or impeach his honesty, virtue, or reputation." *Sellards v. Express–News Corp.,* 702 S.W.2d 677, 679 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). The standard for determining whether a private individual plaintiff may recover is ordinary negligence. *Houston Chronicle Pub. Co. v. Stewart,* 668 S.W.2d 727, 729 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). Truth of the defamatory statement is an affirmative defense. *Frank B. Hall & Co., Inc. v. Buck,* 678 S.W.2d 612, 623–25 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985).

When appellant moved for directed verdict on appellees' libel claim, there was no pleading of truth as an affirmative defense. Although the trial court granted appellant's motion for a trial amendment to plead this defense, appellant never filed such an amendment. Affirmative defenses are to be specifically pled, TEX.R.CIV.P. 94, but they may be tried by consent. TEX. R.CIV.P. 67; *Greenbelt Elec. Coop., Inc. v. Johnson,* 608 S.W.2d 320, 323 n. 5 (Tex.Civ. App.—Amarillo 1980, no writ); *Whitley v. Whitley,* 566 S.W.2d 660, 662 (Tex.Civ. App.—Beaumont 1978, writ ref'd n.r.e.).

Appellant's employee, A.D. Muller, testified that the statements in the letter were factual. Although appellee testified he was injured by the letter, we find no evidence in the record showing that the statements in the letter were false. Thus, we find that the trial court properly granted a directed verdict on this claim. We overrule cross point seven.

We affirm the judgment of the trial court.