NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0755n.06

Case No. 15-3216

FILED
Nov 17, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ORTHOFIX, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ERIC W. HUNTER, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____/ | ) | |

Before: MERRITT, McKEAGUE, and WHITE, Circuit Judges.

**MERRITT, Circuit Judge.** This case is about the relationship of three separate categories of business information: (1) "trade secrets," (2) contractually protected "confidential information," and (3) "general skills and knowledge." The Restatement (Third) of Unfair Competition succinctly sets out the legal meaning of these three categories of information and how the three should be applied in this case.

According to the Restatement, a trade secret is "any information that can be used in the operation of a business or other enterprise and is sufficiently valuable and secret to afford an actual or potential economic advantage over others." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 (AM. LAW INST. 1995). Meanwhile, "a nondisclosure agreement prohibiting the use or disclosure of particular information can clarify and *extend* the scope of an employer's

rights" beyond the protection afforded by trade secret statutes. RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 42 cmt. g. (AM. LAW INST. 1995) (emphasis added). But the rules governing trade secrets are still relevant in analyzing the reasonableness and enforceability of non-disclosure provisions because, in order to justify the contractual restraint, information subject to non-disclosure provisions must share at least some characteristics with information protected by trade secret statutes. *Id.*; RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 41 Reporters' Note cmt. d. (AM. LAW INST. 1995). Finally, information forming the "general skill, knowledge, training, and experience of an employee cannot be" a trade secret or subject to a non-disclosure agreement. RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 42 cmt. d. (AM. LAW INST. 1995). Whether particular information is part of an employee's general skill or knowledge depends on the facts or circumstances of a particular case. *Id*. But the "fact that other competitors have been unsuccessful in independent attempts to [obtain] the information may suggest that the information" does not constitute general skill or knowledge. *Id*. at 4.

In this Ohio diversity case, the dispute over these three categories of business information is between plaintiff-appellant Orthofix, Inc. and defendant-appellee Eric W. Hunter, its former employee. Orthofix is suing Hunter for the misappropriation of Orthofix's trade secrets and the use and disclosure of "confidential information" covered by the non-disclosure provision in Hunter's employment agreement. Hunter left Orthofix for a competitor and immediately started selling his old customers the same medical device made by his new employer. After a bench trial, the district court held that Hunter was not liable to Orthofix because (1) Orthofix did not protect its trade secrets with measures "that are reasonable under the circumstances"; and (2) the non-disclosure provision in Hunter's employment agreement

prohibited Hunter from using his general skills and knowledge and, therefore, formed an unenforceable non-compete agreement.

The district court's primary error in this case arose because it confused Orthofix's contract claim against Hunter for disclosure of "confidential information" with a claim for misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act ("the Ohio Act"). In its conclusions of law, the district court said that "because Orthofix cannot maintain a misappropriation claim [under the Ohio Act], it cannot maintain a breach of contract claim" under Texas contract law governing the disclosure of "confidential information." This conclusion of law led the court to its subsequent conclusion that the "non-disclosure provision here [forms] a lifetime non-compete clause" under Texas law because it prohibits Hunter from using his general skills and knowledge.

We conclude that Hunter breached his employment agreement with Orthofix by using and disclosing "confidential information" that, while not necessarily qualifying as trade secrets, did not constitute his general skills or knowledge. Therefore, we REVERSE the court's judgment in favor of Hunter on Orthofix's breach of contract claim. Because Orthofix prevails on its breach of contract claim, we need not reach Orthofix's alternative trade secret misappropriation claim.[1]

## I.    Background

Eric Hunter is a medical-device salesman. This case centers on his possession and use of the aggregate of information about physicians in his sales territory—information that Orthofix

---

[1] Orthofix explained that the relief it seeks under its Ohio statutory claim is identical to the relief it seeks under its breach-of-contract claim, except that it may be entitled to attorneys' fees only under the latter. (Reply Br. 19).

colloquially refers to as its "playbook." Hunter claims that his possession and use of this information was innocent.

Orthofix employed Hunter, who had no previous experience selling medical devices, from 2000 to November 2012. As an Orthofix salesman, Hunter primarily sold bone growth stimulators,[2] devices typically worn on the skin of patients who have fractured a bone or undergone spinal fusion surgery. Three main competitors—Orthofix, DonJoy Orthopedics, and Biomet—control the bone growth stimulator field.

Upon hiring Hunter, Orthofix presented him with an employment agreement containing both non-compete and non-disclosure provisions.[3] Before signing the agreement, Hunter consulted with an attorney and underlined the term "confidential information" on the signed copy of the agreement. Hunter began his employment at Orthofix as a territory sales manager for northwest Ohio and a portion of southeast Michigan. He worked to make contacts with orthopedic doctors, podiatrists, and neurosurgeons in the Toledo area. Hunter developed customers and acquired detailed information about practices of the doctors in his territory, inquiring about their schedules, prescribing habits, and preferred brands of bone growth stimulators. Over time, Hunter became a district sales manager and his territory expanded to include part of northern Indiana and Metro Detroit.

---

[2] "Bone growth stimulators" are devices that use either electrical stimulation or ultrasonic waves to augment bone repair. A noninvasive electrical stimulator "is characterized by an external power source which is attached to a coil or electrodes placed on the skin or on a cast or brace over a fracture or fusion site" while an ultrasonic stimulator applies an ultrasound signal "to the skin surface at the fracture location via ultrasound conductive coupling gel in order to stimulate fracture healing." Bone Growth Stimulators, http://www.aetna.com/cpb/medical/data/300_399/0343.html (last visited Sept. 16, 2015).

[3] The contract between Orthofix and Hunter provides in pertinent part for the confidentiality of Orthofix information as follows:

Employee agrees that he/she will never use or disclose any *confidential information* which employee has acquired during the term of his/her employment with the corporation . . . . The term "confidential information" shall include customer lists or identification, trade secrets, processes . . . business and trade practices, sales or distribution methods and techniques, regulatory agreements and business strategies, and other confidential information pertaining to the Corporation's business or financial affairs . . . which are developed by corporation at considerable time and expense, and which could be unfairly utilized in competition with the corporation.

In July 2012, Hunter and his fellow employee, Bob Lemanski, began negotiations to join DonJoy Orthopedics, Orthofix's competitor. Richard Spina, DonJoy's area vice president of sales for the central United States, contacted Hunter, and negotiations progressed quickly. By August 2012, Hunter had disclosed to Spina much of the information he had acquired over twelve years that he would use if he transferred his business to DonJoy, including his Orthofix employment agreement, his W-2 wage statement, copies of his Orthofix sales reports, and an account-by-account breakdown of some of his sales of bone growth stimulators.

The three men then developed a plan for Lemanski and Hunter to join DonJoy while trying to avoid legal issues presented by the non-disclosure and non-compete provisions in their Orthofix employment agreements. Upon joining DonJoy, Hunter would, through an introduction by Lemanski, sell bone growth stimulators to those doctors who were former Lemanski clients. Hunter would cease selling bone growth stimulators to his Orthofix customers and would instead introduce his customers to other DonJoy representatives.

Hunter resigned, effective immediately, from Orthofix via email just after midnight on November 13, 2012. Later that morning, he signed an employment agreement with DonJoy. Hunter resigned with no notice in order to thwart any Orthofix efforts to send in a new sales representative to service Hunter's existing Orthofix sales accounts before Hunter could contact them on behalf of DonJoy.

Upon resigning from Orthofix, Hunter maintained Orthofix "confidential information" in the form of documents and spreadsheets on his personal laptop and in his memory. Orthofix claims that its "playbook" is protected as a trade secret or as "confidential information" under Hunter's employment agreement. The "playbook" includes: customer lists, wholesale price information, sales data, staff contacts, physician schedules and preferences, and physicians'

prescribing habits. At the time of Hunter's resignation, Orthofix had no protocol in place for departing employees to return or destroy Orthofix "confidential information." Consequently, no Orthofix employee directed Hunter to return or destroy his "playbook."

Hunter disclosed and used Orthofix's "confidential information" when, as a DonJoy employee, he introduced other DonJoy representatives to his former Orthofix customers and provided information on their buying and use habits. Orthofix's damages expert calculated $2,224,490 in annual lost sales and $1,623,877 in total lost profits for accounts serviced by Hunter and Lemanski.

Orthofix filed this diversity suit against Hunter in the United States District Court for the Northern District of Ohio alleging (1) misappropriation of trade secrets under R.C. §§ 133.61-69, the Ohio Act; (2) breach of contract for violating the non-disclosure and non-compete provisions of Hunter's employment agreement; and (3) tortious interference with Orthofix sales contracts. Hunter filed a counterclaim for disputed unpaid commissions.

On October 24th, 2014, the District Court found in favor of Hunter on Orthofix's claims of trade-secret misappropriation and breach of non-disclosure provision and in favor of Orthofix on its tortious interference claim. The court awarded Orthofix $62,039 in damages for Hunter's tortious interference. The Court found in favor of Hunter on his counterclaim and awarded Hunter $8,710 for unpaid commissions.[4]

## II. Analysis

### A. The Non-disclosure Provision

The district court made two related errors in finding that Hunter was not liable for breaching the non-disclosure provision in his employment agreement. First, the court

---

[4] Previously, the parties jointly moved to reform the non-compete provision because it was overbroad and unenforceable. The district court granted the motion, which had the practical effect of dismissing the non-compete claim from the case.

misinterpreted Hunter's non-disclosure provision when it determined that "confidential information" covered only trade secrets instead of the full measure of information agreed to by the parties as set forth in the agreement. Second, the court misinterpreted Texas law when it held that Hunter's non-disclosure provision constituted an unenforceable non-compete agreement without limitation as to time or geography. We address each of these errors in turn. Without regard to established conflict-of-laws rules, the parties agree that Hunter's non-disclosure provision is governed by Texas law.[5]

### 1) The "Confidential Information" in Hunter's Non-Disclosure Provision Covers more than Trade Secrets

Orthofix argues that the district court erred in interpreting Hunter's non-disclosure provision to cover only trade secrets because Texas law provides for the enforcement of non-disclosure provisions covering confidential information that does not qualify as a trade secret. The interpretation of a contract is a question of law that this Court reviews *de novo*. *Meridian Leasing, Inc. v. Assoc. Aviation Underwriters, Inc.*, 409 F.3d 342, 346 (6th Cir. 2005); *Healthcare Cable Sys., Inc. v. Good Shepherd Hosp., Inc.*, 180 S.W.3d 787, 791 (Tex. App. 2005).

Both Texas courts and federal courts applying Texas law have given effect to non-disclosure provisions regardless of whether the information covered by the provisions achieves trade-secret status. *See Corp. Relocation, Inc. v. Martin*, No. 3:06-CV-232-L, 2006 WL 4101944, at *15 n.17 (N.D. Tex. Sept. 12, 2006) ("Regardless of whether the information contained in the 24 missing files qualifies for trade secret status, the court is satisfied that such

---

[5] Under both Texas and Ohio law, Restatement (Second) of Conflict of Laws § 187 provides the framework for determining whether the parties' agreement as to choice of law is enforceable. *Sekeres v. Arbaugh*, 508 N.E.2d 941, 942 (Ohio 1987); *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2013). Section 187(2)(b) indicates that a court should not apply the law of the chosen state if application of the chosen state law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of applicable law" in the absence of the choice of law provision. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (AM. LAW INST. 1971).

information is confidential pursuant to Section 5(a) of the Employment Agreement, to which the parties expressly agreed."); *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 471 (Tex. App. 2004) ("Liu's non-disclosure obligations under the PIA are not limited solely to protection of trade secrets."); *Simplified Telesys, Inc. v. Live Oak Telecom, L.L.C.*, 68 S.W.3d 688, 693 (Tex. App. 2000) ("Whether the plaintiffs have any valuable secret or not[,] the defendant knows the facts, whatever they are, through a special confidence that he accepted; and while a trade-secret status may be denied, the confidence cannot be.") (alterations in the original) (internal quotation marks and citations omitted); *see also* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 42 cmt. g. (AM. LAW INST. 1995) (stating that a non-disclosure provision's prohibition on use or disclosure of particular information "can clarify and *extend*" the scope of an employer's rights beyond the protection afforded by a trade-secret statute.) (emphasis added). Finally, Texas courts have found that non-disclosure provisions may protect information maintained in an employee's memory. *See, e.g.*, *M.N. Dannenbaum, Inc. v. Brummershop*, 840 S.W.2d 624, 632 (Tex. App. 1993) (stating memorized information may constitute confidential information if the information is not readily accessible).

Here, Hunter promised that he would "never use or disclose any *confidential information* which [he] . . . acquired during the term of his[] employment with [Orthofix]." According to the agreement, "confidential information" included, among other items, Orthofix "customer lists or identification," "business and trade practices," "sales or distribution methods and techniques," "business strategies," and "other confidential information pertaining to [Orthofix's] business or financial affairs." Hunter's understanding and acceptance of the agreement's definition of "confidential information" is only underscored by his underlining of the term "confidential information" and his consultation with an attorney before signing the agreement. Finally, the

record establishes that the information Hunter retained—both through tangible documents and in his memory—and eventually disclosed to DonJoy meets the agreement's definition of "confidential information." *See Orthofix, Inc. v. Hunter*, 55 F. Supp. 3d 1005, 1013 (N.D. Ohio 2014) (determining that Orthofix information disclosed by Hunter was "as a whole, valuable, not readily available, and acquired at great expense and effort by Orthofix and its sales force (including Hunter)."); Because Texas law provides for the enforcement of non-disclosure provisions covering information that is not a protected trade secret, Hunter's non-disclosure provision may prohibit Hunter from disclosing "confidential information" that does not qualify as a trade secret.[6]

Still, Hunter argues that Texas law requires information subject to a non-disclosure provision to be secret, and thus argues that the district court was correct in finding that "'confidential information' protected by the non-disclosure provision is coterminous with information protected" by the Ohio Act. *Orthofix, Inc.*, 55 F. Supp. 3d at 1015. But neither of the Texas cases Hunter cites to support this contention addresses a claim based on the breach of a non-disclosure provision. *M.N. Dannenbaum*, 840 S.W.2d at 631; *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 888 (Tex. App. 2003). While Hunter makes much of the court's statement in *Tom James* that "[t]o warrant protection, the information must have a substantial element of secrecy," this statement refers to trade secrets, not information subject to a non-disclosure provision. *Tom James*, 109 S.W.3d at 888. Similarly, the court's reasoning in *M.N. Dannenbaum*, which Hunter relies upon to support his secrecy argument, is based on a wrongful

---

[6] In limiting the scope of Hunter's non-disclosure provision, the district court seemed to rely, in part, on its finding that the information in the provision did not achieve trade-secret status under the *Ohio* Act. *Orthofix, Inc.*, 55 F. Supp. 3d at 1015; The Ohio Act, however, has no effect on the scope of Hunter's non-disclosure provision because the contractual provision is governed by Texas law. Because the non-disclosure provision is enforceable under Texas law regardless of whether the covered information qualifies as a trade secret, this Court need not determine whether information covered by Hunter's non-disclosure provision would qualify for protection under Texas's trade secret act.

misappropriation of information claim, not a breach of contract claim. *M.N. Dannenbaum*, 840 S.W.2d at 631.

Finally, Hunter argues Orthofix cannot claim that the scope of Hunter's non-disclosure provision extends beyond trade secrets because Orthofix failed to "articulate [at the post-trial hearing] information that would constitute confidential information but not be classified as a trade secret." *Orthofix, Inc.*, 55 F. Supp. 3d at 1015. This argument is without merit. Orthofix was unwilling to identify specific confidential information that did not qualify as a trade secret because it claimed all of the information covered by Hunter's non-disclosure provision also qualified as a trade secret. Although it sought to bring all of the information covered by Hunter's non-disclosure provision within the scope of its trade-secrets claim, Orthofix never conceded that its breach-of-contract claim must rise and fall with its trade-secrets claim. Counsel for Orthofix reemphasized this point in a post-trial hearing:

> I have always envisioned [the relationship between confidential information and trade secrets] as a [Venn] diagram, a big circle I call confidential information. There's a circle within that that I call trade secrets, and the Court is going to decide whether that interior circle is smaller than the confidential information circle . . . . I think an alternative finding that what does not fall under the Ohio trade secret statute does fall within the confidential information definition of the nondisclosure agreement, I think that is prudent, it is judicial economy at work, and of course it has the added benefit of affording Orthofix all of the economic relief to which it is entitled.

Because Orthofix articulated that information covered by Hunter's non-disclosure provision could constitute confidential information but not be classified as a trade secret, Hunter's estoppel and waiver arguments fail.

### 2) The Non-Disclosure Provision Is Not an Unenforceable Non-Compete Agreement under Texas Law

Orthofix argues that the district court erred in finding Hunter's non-disclosure provision to be an unenforceable non-compete clause without limitation as to time or geography. The

district court's conclusion regarding the enforceability of the agreement is a question of law that this Court reviews *de novo*. *Chi. Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 990 (6th Cir. 2007); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 663 (Tex. App. 1992).

Under Texas law, "non-disclosure covenants are more readily enforced than non-competition covenants because they are not restraints on trade, do not prevent the employee from making use of the general experience he acquired during his employment, and do not offend public policy." *CDX Holdings, Inc. v. Heddon*, No. 3:12-CV-126-N, 2012 WL 11019355, at *11 (N.D. Tex. Mar. 2, 2012); *see also Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 622 (S.D. Tex. 2011) (stating that a non-disclosure provision may be enforceable when a covenant not to compete is not). In addition, non-disclosure provisions need not contain geographic and durational limits to be enforceable. *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) (stating that non-disclosure agreements are not expressly governed by the Texas Covenants Not to Compete Act, which requires reasonable temporal and geographic restrictions); *Zep Mfg. Co.*, 824 S.W.2d at 662-63 (finding no law requiring that non-disclosure agreements contain durational and geographic limitations).

Indeed, the Restatement (Third) of Unfair Competition parallels Texas law in concluding that the absence of geographic and durational limitations in a non-disclosure agreement does not render it unenforceable. RESTATEMENT (THIRD) OF UNFAIR COMPETITION §41 cmt. d. (AM. LAW INST. 1995). However, a non-disclosure agreement prohibiting employees from using general knowledge, skill, and experience acquired in their former employment is more properly characterized as a non-compete agreement. *Oxford Global Res.*, 2005 WL 350580 at *2. Texas law does subject non-compete agreements to durational and geographic limitations. *See* Tex.

Bus. & Com. Code §§ 15.50(a) (West 1983) (stating that a non-compete agreement is enforceable if it is reasonable in time, scope, and geography).

When the district court erroneously determined that the scope of Hunter's non-disclosure provision validly extended only to trade secrets, it necessarily made a subsequent finding that the provision constituted an unenforceable non-compete agreement because it attempted to cover "confidential information" that, in the court's view, concerned Hunter's general knowledge or skills, not trade secrets. *Orthofix, Inc.*, 55 F. Supp. 3d at 1015. This subsequent finding was also in error. As we have already determined (*supra*, 8-9), Texas law is clear: "confidential information" is generally defined by the parties, and not by achieving trade-secret status, so long as it does not encompass publicly available information or an employee's general knowledge or skills. *See, e.g.*, *Corp. Relocation*, 2006 WL 4101944, at *15 n.17 ("Regardless of whether the information contained in the 24 missing files qualifies for trade secret status, the court is satisfied that such information is confidential pursuant to Section 5(a) of the Employment Agreement, to which the parties expressly agreed."); *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 629, 639-40 (Tex. App. 2010) (affirming the trial court's finding that a non-disclosure provision prohibiting an employee from ever selling a competing product to a list of companies on his former employer's customer list constitutes a covenant not to compete). Here, the "confidential information" covered by Hunter's non-disclosure provision does not merely concern publicly available information or Hunter's general knowledge. Nor does it prevent Hunter from working for DonJoy or competing with Orthofix. *Id.* Instead, the provision only ensures Orthofix may recover damages for Hunter's use and disclosure of its information—information which the district court found, "as a whole, [to be] valuable, not readily available, and acquired at great expense and effort by Orthofix and its sales force (including Hunter)." *Orthofix, Inc.*, 55 F.

Supp. 3d at 1013;  Because Hunter's non-disclosure provision protects Orthofix's confidential information, and not Hunter's general knowledge, the provision is not an unenforceable non-compete agreement under Texas law.

### 3) Application of Texas Law to Orthofix's Breach of Contract Claim

Because the district court misinterpreted Texas law and left this court with a full record on review, we now apply Texas law to determine whether Hunter breached his employment agreement.

To prevail on its breach of contract claim under Texas law, Orthofix must establish (1) the existence of a binding contract; (2) that Hunter breached the contract; and (3) that it suffered damages caused by Hunter's alleged breach.  *E. Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55, 62 (Tex. App. 1998).

The trial record demonstrates that Hunter and Orthofix are parties to a valid and binding contract. *Orthofix, Inc.*, 55 F. Supp. 3d  at 1007;  While the district court found that the non-disclosure provision in Hunter's contract acted as an unenforceable non-compete agreement, we have already determined that this provision is valid under Texas law. *Supra*, 11.

Hunter breached the non-disclosure provision of his employment agreement when he turned over to a competitor his old company's confidential information.  First, Hunter breached his non-disclosure provision when he disclosed to DonJoy an account-by-account breakdown of his Orthofix bone growth stimulator sales, information that qualifies as "confidential information" under the agreement.  Hunter also breached his agreement when he failed to return to Orthofix forty-six converted customer orders, which underlie Orthofix's tortious interference recovery and contain confidential Orthofix information. *Orthofix, Inc.*, 55 F. Supp. 3d at 1015-16;  Finally, Hunter breached the non-disclosure provision of his contract when he drew upon his

knowledge of his former customers' prescribing habits, schedules, and contact information in introducing DonJoy representatives to these very customers. While Hunter may not be liable under Texas law for his general use or disclosure of publicly available information, the compilation of information Hunter acquired as an Orthofix employee and later used to introduce DonJoy representatives to his former customers extends far beyond information that could reasonably be considered public. *See Orthofix, Inc.*, 55 F. Supp. 3d at 1013; (finding that Orthofix's confidential information "is, as a whole, valuable, not readily available, and acquired at great expense and effort by Orthofix and its sales force (including Hunter)."); (Hunter's admission that it could take as long as six months for someone to acquire his level of detailed knowledge about a surgeon).

Because Orthofix has demonstrated both the existence and breach of a valid contract under Texas law, the judgment of the district court is REVERSED and the case is REMANDED to the district court for the calculation of damages and further proceedings consistent with this opinion.