Yahya HASSAN, Individually and d/b/a Safe Cab Co. a/k/a Safe Cab Company, and Kemal Mohammed, Individually and d/b/a Safe Cab Co. a/k/a Safe Cab Company, Appellants,

v.

GREATER HOUSTON TRANSPORTATION COMPANY d/b/a Yellow Cab, Appellee.

No. 01–05–00494–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 15, 2007.

Dissenting Opinion by Judge Keyes Feb. 16, 2007.

Rehearing En Banc Overruled Oct. 30, 2007.

James F. Tyson, Houston, for Appellants.

Robert A. Plessala, Marc A. Young, Cokinos, Bosien & Young, Houston, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

SAM NUCHIA, Justice.

■ Appellees, Greater Houston Transportation Company d/b/a Yellow Cab ("Yellow Cab"), brought a trade dress [1] cause of action against appellants, Yahya Hassan, individually and d/b/a Safe Cab Co. a/k/a Safe Cab Company, and Kemal Mohammed, individually and d/b/a Safe Cab Co. a/k/a Safe Cab Company ("Safe Cab"), under United States Code title 15, section 1125(a),[2] commonly known as the Lanham Act, and Texas common law. After a jury trial, the trial court rendered judgment granting a permanent injunction in favor of Yellow Cab and prohibiting Safe Cab from operating any taxicab with a color scheme that predominantly used the color yellow. On appeal, Safe Cab asserts that (1) the trial court lacked subject-matter jurisdiction over Yellow Cab's Lanham Act claim; (2) the trial court erred in rendering judgment for Yellow Cab because the jury did not find an element of its Texas common-law unfair competition claim; (3) the trial court erred by giving the jury an erroneous definition of "secondary meaning"; (4) the evidence was legally insufficient to support the jury's finding of secondary meaning; (5) the evidence was factually insufficient to support the jury's finding of secondary meaning; and (6) the evidence was factually insufficient to support the jury's finding that Safe Cab's use of the color yellow on its taxis caused a likelihood of confusion. We reverse the judgment and remand the case for further proceedings.

## BACKGROUND

Since the 1940s, Yellow Cab has been operating yellow-colored taxicabs in the Houston metropolitan area. Today, on an average day, there are between 700 and 800 Yellow Cab taxis servicing greater Houston each day. While Yellow Cab is the dominant taxi company in Houston,

---

1. Trade dress under section 43(a) of the Lanham Act consists of the total image of a product or service, including product features such as design, size, shape, color, packaging labels, color combinations, graphics, or service business features such as retail decor, architectural features, menus, restaurant layouts, styles of service, costumes, and occasionally marketing techniques as well. 2 ANNE G. LALONDE, KAREN GREEN & JEROME GILSON, TRADEMARK PROTECTION & PRACTICE § 2A.01[1] (59th ed.2006).

2. *See* 15 U.S.C.S. § 1125(a) (LexisNexis 2006).

there are about 120 other taxi companies. Thirty-six of these other taxicab companies use predominately yellow-colored taxis, but each has a different color scheme. As far back as 1993, there were more than 20 taxicab companies in Houston using a predominately yellow color scheme. As the name implies, Yellow Cab's taxis are painted yellow. They have black lettering and crossed-sword logos on the side.

In 2003, Safe Cab received a license to operate in the City of Houston. Its choice of a yellow paint scheme for its taxi[3] was approved by the Transportation Section of the City of Houston. In that same year, Yellow Cab complained to the Transportation Section about the existence of other yellow-colored taxis, at which point the city placed a moratorium on any further yellow-colored taxis. However, there were still over 100 yellow-colored taxis on the streets of Houston that were not associated with Yellow Cab.

Yellow Cab sent "cease and desist" demand letters to taxi companies with yellow color schemes, demanding that they stop using yellow-colored taxis and offering to paint their taxis another color at Yellow Cab's expense. Two taxi companies, with a total of approximately 40 taxis, accepted Yellow Cab's offer. After Safe Cab refused to comply with Yellow Cab's demand, Yellow Cab filed suit under (1) the Lanham Act, the federal statutory scheme for trademark and trade dress infringement, and (2) a Texas common-law claim of unfair competition, contending that its yellow-colored taxis were protectable trade dress. Yellow Cab sought a permanent injunction enjoining Safe Cab from using yellow-colored taxis. The jury returned a verdict in favor of Yellow Cab, and the trial court rendered judgment permanently enjoining Safe Cab from using yellow-colored taxis. After the trial court denied

Safe Cab's motion for new trial, Safe Cab filed this appeal.

## Subject–Matter Jurisdiction

In its first point of error, Safe Cab contends that the trial court lacked subject-matter jurisdiction over Yellow Cab's Lanham Act claim because Yellow Cab did not prove that Safe Cab's services were used "in commerce." Yellow Cab responds that the "in commerce" requirement of the Lanham Act is not jurisdictional, but instead is simply an element of the cause of action, and therefore Safe Cab has waived this argument by failing to preserve the complaint.

The Lanham Act provides in pertinent part:

(1) Any person who, on or in connection with any goods and services, or any container for goods, uses *in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .

. . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.S. § 1125(a)(1) (LexisNexis 2006) (emphasis added).

Several federal circuit courts of appeals have held that the "in commerce" language is a jurisdictional prerequisite. *See Starter Corp. v. Converse, Inc.,* 84 F.3d 592, 595

---

3.  Safe Cab had only one taxi.

(2d Cir.1996) (holding that use of marks was sufficiently "in commerce" to sustain federal-question jurisdiction under Lanham Act); *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 505 (9th Cir.1991) (stating that act in commerce triggers subject-matter jurisdiction); *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 453 n. 1 (11th Cir.1984) ("In actions involving unregistered trademarks, the jurisdiction of the federal courts extends only to cases in which a false designation of origin has been 'transported or used in commerce.' "). However, at least one circuit court has treated the requirement as a nonjurisdictional element of the cause of action. *See World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488–89 (5th Cir.1971).

■ Decisions of the federal courts of appeals do not bind Texas courts, although they are received with respectful consideration. *Hayes v. Pin Oak Petroleum, Inc.*, 798 S.W.2d 668, 672 n. 5 (Tex.App.-Austin 1990, writ denied). Texas state courts "are free to interpret federal law independently, though in the first instance we typically seek guidance from among the decisions of the lower federal courts." *Kiefer v. Continental Airlines, Inc.*, 882 S.W.2d 496, 502 (Tex.App.-Houston [1st Dist.] 1994), *aff'd*, 920 S.W.2d 274 (Tex. 1996). Unless a federal statute provides for exclusive federal jurisdiction, state courts have the authority to render binding decisions based on their interpretation of federal law. *ASARCO v. Kadish*, 490 U.S. 605, 617, 109 S.Ct. 2037, 2045, 104 L.Ed.2d 696 (1989).

■ Unlike federal courts, in which the authority to adjudicate must be established for each case, Texas district courts are courts of general jurisdiction, and subject-matter jurisdiction over a cause of action is presumed unless a contrary showing is made. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex.2000). In *Kazi*, our supreme court held that the statutory requirement in that case was not jurisdictional.[4] *Id.* at 73. The court concluded that a plaintiff's failure to establish a statutory prerequisite does not deprive the trial court of subject-matter jurisdiction over the plaintiff's claim if the statutory prerequisite is merely a condition on which the plaintiff's right to relief depends. *Id.* at 76–77. Thus, a statutory requirement may be mandatory without being jurisdictional. *Id.* at 76. Compliance with nonjurisdictional, mandatory requirements can be waived if not timely asserted. *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex.2004). However, subject-matter jurisdiction may not be waived by the parties and may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993).

■ Appellant has made no showing that the "in commerce" requirement is jurisdictional, and we do not so interpret the language of the Lanham Act. Rather, here, as in *Kazi*, the right to maintain a suit for trade dress infringement goes to the right of the plaintiff to obtain relief, not to the right of the court to entertain the suit. *See Kazi*, 12 S.W.3d at 75, 76–77. Safe Cab did not object in the trial court that the alleged infringement of the Lanham

**4.** In so holding, *Kazi* overruled *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1087 (1926), which held that "where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex.2000). Thus, *Kazi* abolished the jurisdictional distinction drawn in *Mingus* between common law and statutory causes of action.

Act did not occur "in commerce." Therefore, Safe Cab waived its right to require Yellow Cab to prove that the alleged infringement affected interstate commerce.

Accordingly, we overrule Safe Cab's first point of error.

## Jury Charge[5]

■ In its third point of error, Safe Cab asserts that the trial court erred in submitting an erroneous definition of "secondary meaning" in the jury charge. Yellow Cab first contends that Safe Cab waived this point of error because it did not properly object.

■ The Texas Supreme Court has adopted the following test for preservation of charge error: Did the trial court know of and overrule the substance of the complaint at a time when the court could have, but did not, correct the problem in the charge? *See State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992) (holding that there "should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling."). Therefore, an objection to a defective instruction is sufficient to preserve error, and a request using substantially correct language is not required. *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994).

■ In this case, the proposed jury charge stated that " 'secondary meaning' means that the color at issue has acquired

a meaning beyond the primary meaning, by having become associated by use, promotion or advertising, in the public mind with the business of YELLOW CAB." At the charge conference, Safe Cab objected to the definition of secondary meaning, stating,

> In addition to Question No. 1, the defense has previously submitted for inclusion a definition of secondary meaning, additional information regarding color; and we would ask that our definition of color—or the portion of secondary meaning relating to color—specifically that color may acquire secondary meaning—may have—I'm sorry—that—the portion we have submitted previously to the Court that talks in terms of for color [sic] to acquire secondary meaning requires in the minds of the consuming public the color has become uniquely linked with only one provider of the service to the exclusion of all other providers of the service as causes confusion to its origin. We think that should be included in the "secondary meaning" definition in Question No. 1, Your Honor. We ask that it be included.

The trial court then stated, "Court notes your objection to the lack of inclusion of the terminology regarding color. Court overrules said objection." The trial court clearly understood Safe Cab's complaint and ruled on it. Therefore, we conclude that Safe Cab preserved its complaint.

Yellow Cab argues, in support of the jury charge in this case, that the definition provided by the trial court is more faithful

---

5. Generally, a reviewing court must consider rendition points before considering remand points. Tex.R.App. P. 43.3; *Pruitt v. Republic Bankers Life Ins. Co.,* 491 S.W.2d 109, 112 (Tex.1973). Therefore, we would usually consider Safe Cab's legal sufficiency point of error first. However, Safe Cab did not move for a directed verdict, file a motion for judgment notwithstanding the verdict, or otherwise preserve its no-evidence complaint except in its motion for new trial. *See Horrocks v. Tex. Dep't of Transp.,* 852 S.W.2d 498, 499 (Tex.1993) (holding that appeals court can only remand for new trial when that is only relief asked for by parties below). Therefore, because Safe Cab asked only for a new trial, we can only remand for a new trial.

to the Supreme Court opinion in *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 766 n. 4, 112 S.Ct. 2753, 2756 n. 4, 120 L.Ed.2d 615 (1992), and "accepted jury submission practice" than Safe Cab's proposed language.

In *Two Pesos,* the Supreme Court noted that secondary meaning "is used generally to indicate that a mark or dress 'has come through use to be uniquely associated with a specific source.'" *Id.* (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 13 cmt. e (1990)).[6] The Court, relying its own precedent, then stated, "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is *to identify the source of the product rather than the product itself."* *Id.* (citing *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851, n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982)) (emphasis added). Yellow Cab suggests that the charge given in this case is correct when compared with the model charge in a treatise on federal pattern jury charges. That model charge states,

> A word or phrase that is merely descriptive can still become a trademark if such a secondary meaning has been developed for it by usage in the marketplace. It is not necessary for plaintiff [ ] to prove that all or even a majority of the consuming public understands this secondary meaning. What must be shown by the evidence is that a significant number of the consuming public have associated [*term* ] with plaintiff [ ] before [*date* ].

3A KEVIN F. O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE &

INSTRUCTIONS § 159.63 (5th ed.2001). The same treatise also states that trade dress acquires secondary meaning "when it has been used in such a way that its primary significance in the minds of the prospective purchasers is not the [dress] itself, but the identification of the [dress] with a single source." *Id.* Clearly, the latter definition is relying on Supreme Court precedent. *Two Pesos,* 505 U.S. at 766 n. 4, 112 S.Ct. at 2756 n. 4; *see also Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 210, 120 S.Ct. 1339,1343, 146 L.Ed.2d 182 (2000) (defining secondary meaning as occurring "when, in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.").

■ The instruction given to the jury in this case did not track either the instruction in the federal model charge or the language found in *Two Pesos* or *Wal–Mart.* The jury charge asked only that the "color at issue has acquired a meaning beyond the primary meaning, by having become associated by use, promotion or advertising, in the public mind with the business of YELLOW CAB." The definitions propounded by the Supreme Court ask for more than the "association" of a color through advertising and other promotional activities; the correct definition requires that the trade dress be "uniquely associated with a specific source" and "identify the source of the product rather than the product itself."

■ We conclude that the jury charge definition strayed from the definition of secondary meaning as set out by the Supreme Court. We further conclude that

**6.** Although the federal courts of appeals' holdings are not binding on Texas appellate courts, *Hayes v. Pin Oak Petroleum, Inc.,* 798 S.W.2d 668, 672 n. 5 (Tex.App.-Austin 1990, writ denied), the definition of secondary meaning involves a federal question under the Lanham Act. Therefore, we are bound by the United States Supreme Court's holding in this area. *See Sharp v. Caterpillar, Inc.,* 932 S.W.2d 230, 235 (Tex.App.-Austin 1996, writ denied) (holding same).

the erroneous definition was harmful because it probably caused the rendition of an improper judgment. *See* Tex.R.App. P. 41.1(a). Here, there was no evidence of a *unique* association with a specific source—a specific taxicab company. There was evidence that approximately 40 taxicab companies in Houston used a predominately yellow color scheme and that some of those companies had operated in the City of Houston for at least 10 years. This evidence was uncontested. The evidence also established that Yellow Cab was, by far, the largest of these companies, having in excess of 700 cabs on the streets of Houston daily. Therefore, it is possible that the public may have come to associate the color yellow with Yellow Cab. However, it is equally possible that the public is aware that not all yellow cabs are Yellow Cabs.

The definition in the court's charge permitted the jury to find that the color yellow had acquired a secondary meaning if it was merely "associated by use, promotion or advertising with Yellow Cab," as opposed to being *"uniquely associated"* with only Yellow Cab (the single source). It is quite a different thing to tell a jury it must find an association through advertising and promotion as opposed to finding a unique association with a specific source of the product and identifying the source rather than the product. The charge definition did not require a rigorous enough inquiry on the part of the jury, in line with Supreme Court precedent, and therefore the jury would probably have reached a different result had it been given the correct definition.

We hold that the trial court erred in providing an erroneous definition of sec-

ondary meaning in the jury charge and that Safe Cab was harmed by that error. Accordingly, we sustain Safe Cab's third point of error.

## CONCLUSION

Because we have sustained Safe Cab's challenge to the jury charge definition of secondary meaning, we need not reach its second point of error complaining that there was no finding of irreparable harm—an element of an unfair competition claim.[7] Likewise, because Safe Cab's fourth, fifth, and sixth points of error challenging the legal and factual sufficiency of the evidence are remand points, we need not reach them.

We reverse the judgment of the trial court and remand the case for further proceedings.

Justice KEYES, dissents.

EVELYN V. KEYES, Justice, dissenting.

I withdraw my previous dissenting opinion dated February 15, 2007 and issue the following dissenting opinion in its stead. I respectfully dissent. This is an important trade dress infringement case of first impression. It was brought by appellee, Greater Houston Transportation Company d/b/a Yellow Cab ("Yellow Cab") against appellants, Yahya Hassan, individually and d/b/a Safe Cab Co. a/k/a Safe Cab Company, and Kemal Mohammed, individually and d/b/a Safe Cab Co. a/k/a Safe Cab Company ("Safe Cab"), under 15 U.S.C. § 1125(a) (2000), commonly known as the Lanham Act (the "Act"), and Texas common law. Appellant assigns points of error under both. The majority incorrectly

---

7. Liability for unfair competition requires a "finding of some independent substantive tort or other illegal conduct." *Schoellkopf v. Pledger,* 778 S.W.2d 897, 904 (Tex.App.-Dallas 1989, no writ). Because there was error in the jury charge submission of Yellow Cab's trade infringement cause of action (the independent tort supporting the unfair competition claim), we need not reach this point of error relating to unfair competition. *Id.*

concludes that appellant failed to preserve its challenge to the legal sufficiency of the evidence, proceeds directly to analyze the jury charge, summarily rejects a legally correct jury charge as erroneous without analyzing trade dress law, conducts a cursory and impressionistic harm analysis, concludes that the error was harmful, and remands the case for a new trial under an incorrect charge. The opinion invites the waste of judicial resources, confusion in the jury, and error in the next judgment and in future cases. It also creates a conflict between interpretations of the Lanham Act by Texas state courts and federal courts with concurrent jurisdiction over the same federal claims. I would affirm.

## Jury Charge Error: Standard of Review

In its third point of error, Safe Cab asserts that the trial court erred in submitting an erroneous definition of "secondary meaning" in the jury charge. Referring only to a portion of the language from the challenged jury instruction and a single sentence in the language of a seminal Supreme Court case, and without citing or applying the standard of review for reversible jury charge error, the majority conclusorily holds that an incorrect charge requiring reversal was submitted. Because I believe the challenged jury instruction was not erroneous under the applicable standard of review and that, even if it had been erroneous, the error would not have caused the rendition of an improper judgment because the evidence of trade dress infringement was legally and factually sufficient to support the judgment, I would affirm.

"Rule 277 of the Texas Rules of Civil Procedure requires a trial court to submit 'such instructions and definitions as shall be proper to enable the jury to render a verdict.'" *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997) (quoting TEX.R. CIV. P. 277). An appellate court reviews a trial court's decision to submit or refuse an instruction under an abuse of discretion standard. *Shupe v. Lingafelter,* 192 S.W.3d 577, 579 (Tex.2006). When the trial court refuses to submit a requested instruction on an issue raised by the pleadings and the evidence, the issue on appeal is whether the request was reasonably necessary to enable the jury to reach a proper verdict. *Id.; Texas Workers' Comp. Ins. Fund v. Mandlbauer,* 34 S.W.3d 909, 912 (Tex.2000). To be proper, an instruction "must (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and the evidence." *Mandlbauer,* 34 S.W.3d at 912.

The trial court has wide discretion to determine the sufficiency of definitions and instructions. *Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 791 (Tex.1995); *Allen v. Allen,* 966 S.W.2d 658, 659 (Tex. App.-San Antonio 1998, pet. denied). The test of the sufficiency of a definition is its reasonable clarity in enabling jurors to understand legal words or phrases so that they may properly answer the questions and render a verdict in the case. *Allen,* 966 S.W.2d at 660; *Harris v. Harris,* 765 S.W.2d 798, 801 (Tex.App.-Houston [14th Dist.] 1989, writ denied). An instruction is improper only if it misstates the law as applied to the facts. *Harris,* 765 S.W.2d at 801.

If the reviewing court determines that the trial court gave an improper definition, it must then proceed to inquire whether the error was harmless. *Allen,* 966 S.W.2d at 660; *M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 631 (Tex. App.-Houston [14th Dist.] 1992, writ denied); *see also* TEX.R.APP. P. 44.1(a)(1). The omission of an instruction is reversible error only if it probably caused the rendition of an improper judgment. *Shupe,* 192 S.W.3d at 579.

### The Challenged Jury Instruction

Jury Question No. 1 asked, "Does YELLOW CAB's predominant use of the color yellow constitute a valid trade dress in the City of Houston?"

The instruction to which appellants object stated:

*Definition* "Secondary meaning": You are instructed that for purposes of this question, *"secondary meaning" means that the color at issue has acquired a meaning beyond the primary meaning, by having become associated by use, promotion or advertising, in the public mind with the business of YELLOW CAB.*

*You may consider the following factors* when you determine whether YELLOW CAB's predominant use of the color yellow has acquired a secondary meaning:

(1) length and manner of use of the trade dress;

(2) volume of sales;

(3) amount and manner of advertising

(4) nature of the use of the trade dress

(5) SAFE CAB['s] intent in copying the trade dress.

No one of these factors is necessarily conclusive, but the consideration of each should be weighed in light of the total evidence presented at trial. You are instructed that YELLOW CAB need not produce evidence on all or even a majority of these factors. You're are further instructed that *no one factor is dispositive.*

(Emphasis added.)

Safe Cab informed the trial court at the charge conference that it believed a proper statement of the law required the court to instruct the jury that "secondary meaning ... requires in the minds of the consuming public *the color has become uniquely linked with only one provider of the ser-vice to the exclusion of all other providers of the service as causes confusion to its origin."* (Emphasis added.) The trial court stated that it "notes your objection to the lack of inclusion of the terminology regarding color. Court overrules said objection."

### Propriety of the Instruction Under the Lanham Act

To determine whether the instruction on secondary meaning submitted to the jury was proper, we must determine whether it accurately stated the law and thus assisted the jury in making a finding supported by the pleadings and the evidence. *See Mandlbauer,* 34 S.W.3d at 912. To make this determination, it is necessary to determine what constitutes proof of trade dress infringement under the Lanham Act.

The Lanham Act provides in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses *in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person ...

\* \* \*

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

\* \* \*

(3) In a civil action for trade dress infringement under this Act for trade dress not registered on the

principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

15 U.S.C. § 1125(a) (2000) (emphasis added). The Act establishes a cause of action for trade dress infringement. 15 U.S.C. § 1125(a)(3) (2000 & Supp. I 2006) (specifically referring to "civil action[s] for trade dress infringement under this chapter for trade dress not registered on the principal register"); *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209, 120 S.Ct. 1339, 1343, 146 L.Ed.2d 182 (2000); *Eppendorf–Netheler–Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 354 (5th Cir. 2002). Trade dress, for which the Lanham Act provides protection, refers to the design or packaging of a product that serves to identify the product's source. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28, 121 S.Ct. 1255, 1259, 149 L.Ed.2d 164 (2001); *Samara Bros.*, 529 U.S. at 209, 120 S.Ct. at 1342; *Eppendorf–Netheler–Hinz*, 289 F.3d at 355. The purpose of trade dress protection under the Lanham Act is "to 'secure to the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing [producers].' " *Eppendorf–Netheler–Hinz*, 289 F.3d at 355 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774, 112 S.Ct. 2753, 2760, 120 L.Ed.2d 615 (1992)).

The Supreme Court and the federal courts have identified three essential elements of a Lanham Act claim.

First, to prevent trademark law from inhibiting legitimate competition by allowing a producer to control a useful product feature, "the person who asserts trade dress protection [under the Lanham Act] has the burden of proving that the matter sought to be protected is not functional." *Eppendorf–Netheler–Hinz*, 289 F.3d at 355 (quoting 15 U.S.C. § 1125(a)(3)); *see also*

*Two Pesos*, 505 U.S. at 769, 112 S.Ct. at 2758.

Second, in order to be entitled to protection, a trademark, including trade dress, must be distinctive. *Two Pesos*, 505 U.S. at 768, 112 S.Ct. at 2757. Trademarks are generally classified as (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Id.* Generic trademarks are not entitled to protection; trademarks that are suggestive, arbitrary, or fanciful are intrinsically distinctive. *See id.* Descriptive marks are not inherently distinctive, but they may acquire the distinctiveness that allows them to be protected by the Lanham Act by acquiring "secondary meaning." *Two Pesos*, 505 U.S. at 769, 112 S.Ct. at 2757; *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 793–94 (5th Cir.1983). "Secondary meaning is used generally to indicate that a mark or dress 'has come through use to be uniquely associated with a specific source.' " *Two Pesos*, 505 U.S. at 766 n. 4, 112 S.Ct. at 2756 n. 4. Thus, "[t]o establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Id.* (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982)).

Third, liability for trade dress infringement requires proof of the likelihood of confusion between the product of the plaintiff and that of the defendant. *Two Pesos*, 505 US. at 769, 112 S.Ct. at 2758; *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 257 (5th Cir.1997); *Blue Bell Bio–Med. v. Cin–Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir.1989).

Thus, to prove that Safe Cab infringed its protected trade dress, Yellow Cab had to prove that (1) the color yellow on its cabs is a non-functional trade dress (a

matter which is undisputed); (2) the color yellow has acquired a secondary meaning for Houston cabs, *i.e.*, it has become primarily associated in the minds of the public as signifying the brand "Yellow Cab" rather than a cab that is yellow; and (3) there is a likelihood of confusion by consumers between Safe Cab and Yellow Cab.

"To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Two Pesos,* 505 U.S. at 766 n. 4, 112 S.Ct. at 2756 n. 4; *see also Samara Bros.,* 529 U.S. at 211, 120 S.Ct. at 1343. While no color can ever be inherently distinctive, a color may be protected as a trademark upon a showing of secondary meaning. *Samara Bros.,* 529 U.S. at 211–12, 120 S.Ct. at 1343–44. This occurs when, "over time, customers … come to treat a particular color on a product or its packaging … as signifying a brand." *Id.* at 212, 120 S.Ct. at 1344. The existence of secondary meaning is a question for the trier of fact, and a district court's finding on this issue will not be disturbed unless clearly erroneous. *Sunbeam Prods.,* 123 F.3d at 253; *Zatarains,* 698 F.2d at 794. "[T]he major inquiry is the consumer's attitude towards the mark." *Zatarains,* 698 F.2d at 795.

Evidence relevant to the determination of secondary meaning includes (1) the length and manner of the use of the mark, (2) the nature and extent of advertising and promotion of the mark, (3) the volume of sales of the product, and (4) instances of actual confusion. *Sunbeam Prods.,* 123 F.3d at 254; *Zatarains,* 698 F.2d at 795. While none of these factors is sufficient by itself to establish the necessary link in the minds of consumers between a product and its source, they may in combination do so. *Zatarains,* 698 F.2d at 795. The ultimate inquiry, however, is not the extent of the promotional efforts, but their effectiveness. *Id.; see also Bank of Texas v. Commerce Sw., Inc.,* 741 F.2d 785, 788 (5th Cir.1984). Accordingly, the most direct and persuasive way of establishing secondary meaning is through survey evidence. *Sunbeam Prods.,* 123 F.3d at 253–54; *Zatarains,* 698 F.2d at 795.

Here, the instruction submitted to the jury stated that " 'secondary meaning' means that *the color at issue has acquired a meaning beyond the primary meaning, by having become associated* by use, promotion or advertising, in the public mind *with the business of YELLOW CAB.*" (Emphasis added.) *Cf. Two Pesos,* 505 U.S. at 766 n. 4, 112 S.Ct. at 2756 n. 4 (holding that "[t]o establish secondary meaning, a manufacturer must show that, in the minds of the public, *the primary significance of a product feature or term is to identify the source of the product* rather than the product itself.") (emphasis added) (quoting *Inwood Labs.,* 456 U.S. at 851 n. 11, 102 S.Ct. at 2187 n. 11). The instruction does not state that the primary significance of the color yellow when used on a cab must shift from the color itself to the business. However, any suggestion of a deficiency in the definition was cured by the instruction's accurate recital of the factors for the jury to consider in proving secondary meaning. The instruction went on to state:

> You may consider the following factors when you determine whether YELLOW CAB's predominant use of the color yellow has acquired a secondary meaning:
>
> (1) length and manner of use of the trade dress;
>
> (2) volume of sales;
>
> (3) amount and manner of advertising
>
> (4) nature of the use of the trade dress

(5) SAFE CAB['s] intent in copying the trade dress.

No one of these factors is necessarily conclusive, but the consideration of each should be weighed in light of the total evidence presented at trial. You are instructed that YELLOW CAB need not produce evidence on all or even a majority of these factors. You're are further instructed that no one factor is dispositive.

The instruction thus includes an accurate summary of the factors the federal courts have held are to be considered in determining whether a product has acquired a secondary meaning for Lanham Act purposes. *See Sunbeam Prods.*, 123 F.3d at 254; *Zatarains*, 698 F.2d at 795 (evidence relevant to determination of secondary meaning includes (1) length and manner of the use of the mark, (2) nature and extent of advertising and promotion of mark, (3) volume of sales, and (4) instances of actual confusion). Moreover, the instruction accurately and helpfully informed the jury that "[n]o one of these factors is necessarily conclusive, but the consideration of each should be weighed in light of the total evidence presented at trial."

By contrast, the instruction Safe Cab sought would have *incorrectly* informed the jury that "for color to acquire secondary meaning requires in the minds of the consuming public the color has become *uniquely linked* with only one provider of the service *to the exclusion of all other providers* of the service." (Emphasis added.) This implies a higher burden of proof than any of the legal authority interpreting the Lanham Act requires. In addition, the proffered instruction—by itself—would have entirely failed to advise the jurors either that they were to consider specific factors in determining whether the color yellow had acquired a secondary meaning or that they were to weigh all factors in light of the total evidence rather than considering any one of them dispositive.

Thus, the rejected instruction would have left the jury with the incorrect impression that all they had to consider was proof that the color yellow was "uniquely linked" with Yellow Cab "to the exclusion of all other providers," which is not the standard of proof of a Lanham Act claim.

The instruction on secondary meaning submitted to the jury accurately stated the law, assisted the jury, and comported with the pleadings and proof of a Lanham Act claim. It was, therefore, well within the judge's broad discretion to submit. *See Mandlbauer*, 34 S.W.3d at 912; *Plainsman Trading Co.*, 898 S.W.2d at 791; *Allen*, 966 S.W.2d at 660. By contrast, the instruction proffered by appellant in its place was unhelpful and misleading. Therefore, I would overrule Safe Cab's third point of error. The majority, however, recites only a few words of the submitted instruction without acknowledging the rest, ignores the federal courts' determination of factors to consider in determining whether a product has established a secondary meaning, determines conclusorily that the instruction is erroneous, and sustains the point of error. It then conducts a cursory harm analysis and orders a new trial under an *improper* instruction, thereby inviting confusion in the jury, error by the trial court, and the waste of litigation resources.

### Harm Analysis: Sufficiency of the Evidence to Support the Judgment

When an appellate court finds error in the submission of a jury instruction, a harm analysis is mandatory. *Allen*, 966 S.W.2d at 660; *M.N. Dannenbaum*, 840 S.W.2d at 631. Thus, if I were to agree with the majority's conclusion that the instruction submitted on secondary meaning was erroneous, I would determine whether the error was harmful by asking whether

it probably caused the rendition of an improper judgment. *See Shupe*, 192 S.W.3d at 579. Because I would find that the evidence was both legally and factually sufficient to support the judgment under the proper factors, I do not agree with the majority's implied conclusion that its submission probably caused the rendition of an improper judgment and, therefore, reversal and remand was required. *See id.* at 579. I would affirm the judgment below.[1]

### Evidentiary Issues

To prove trade dress infringement under the Lanham Act, Yellow Cab had to prove (1) that the color yellow is nonfunctional, which is not disputed; (2) that the color yellow had acquired a secondary meaning in the Houston marketplace; and (3) that there was a likelihood of confusion in the mind of the public between Safe Cab and Yellow Cab. *See Two Pesos*, 505 U.S. at 768–69, 112 S.Ct. at 2757–58. In its fourth, fifth, and sixth points of error, Safe Cab argues that the evidence was legally and factually insufficient to support the jury's implicit finding of "secondary meaning" and that the evidence was factually insufficient to support the jury's finding that Safe Cab's use of the color yellow on its taxis caused a likelihood of confusion in the minds of the public. Therefore, I would address these points of error to determine whether the judgment was improper.

### Standard of Review of Legal and Factual Sufficiency of the Evidence

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that no evidence supports the finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In deciding whether the evidence in support of the finding amounts to "no evidence," the reviewing court considers only the evidence and inferences tending to support the jury's finding, viewed in the light most favorable to the finding, and disregards all contrary evidence and inferences. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992); *see City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005) (holding that whether reviewing court starts with all or only part of record, it "must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it," but "if the evidence allows of only one inference, neither jurors nor the reviewing

---

1. I would have addressed appellant's legal and factual sufficiency arguments first and rendered judgment rather than addressing appellant's jury instruction issue first and remanding for a new trial. The majority concludes that it cannot do this because "Safe Cab did not move for a directed verdict, file a motion for judgment notwithstanding the verdict, or otherwise preserve its no-evidence complaint except in its motion for new trial.... Therefore, because Safe Cab asked only for a new trial, we can only remand for a new trial." Therefore, it addressed the jury charge first. However, the majority does not dispute that Safe Cab did preserve its no-evidence point of error. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991) ("A 'no evidence' point of error is preserved for appeal if "raised by (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial."). Rendition of judgment is the appropriate remedy if the party with the burden of proof allegedly offers no evidence, or legally insufficient evidence, to support a claim. *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 626 n. 58 (Tex.2004); *Horrocks v. Texas Dept. of Transp.*, 852 S.W.2d 498, 499 (Tex.1993) (per curiam) ("Ordinarily, an appellate court should render judgment after sustaining a complaint as to the legal sufficiency of the evidence.").

court may disregard it"). Thus, "[a] no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *City of Keller*, 168 S.W.3d at 810 & n. 16 (quoting *Havner*, 953 S.W.2d at 711). "More than a scintilla" of evidence exists to support a jury finding when the evidence supporting the finding, taken as a whole, would enable reasonable and fair-minded people to draw different conclusions. *Havner*, 953 S.W.2d at 711.

In reviewing the factual sufficiency of the evidence to support a jury finding, the court conducts a neutral review of all the evidence and sets aside the verdict only "if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *see also Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

### Legal Sufficiency of Evidence of Secondary Meaning

Here, I would hold that the evidence taken as a whole and considered under the *Zatarains* factors in the light most favorable to the verdict is legally sufficient to support the jury's implicit finding that Yellow Cab established a secondary meaning for the color yellow. *See Zatarains*, 698 F.2d at 795.

#### (1) Length and manner of use of the mark

Yellow Cab produced evidence that it had operated only predominantly yellow taxicabs in the Houston area since the 1940's, was the senior user of yellow colored taxis in Houston, and promoted the color yellow as its trade dress. It also produced evidence that it had worked assiduously to associate its trade dress with superior training of its personnel and superior service.

#### (2) Nature and extent of advertising and promotion of the mark

Yellow Cab also produced evidence that it used its taxicabs as rolling advertisements for Yellow Cab and that it engaged in extensive marketing efforts in the media. In the year prior to trial it had spent several hundred thousand dollars marketing and advertising. It also purchased a dominant advertisement displaying its cab and the color yellow in the Yellow Pages. In addition, it belonged to trade and business associations, sponsored charitable events, and used a vintage cab and a Hummer painted with Yellow Cab's predominantly yellow color in parades and promotions.

#### (3) Volume of sales

Yellow Cab also produced evidence that it had grown its operations from 67 cabs in 1967 to 894 cabs at the time of trial and that 700 to 800 of its yellow taxis operated daily on Houston streets, each with identical yellow coloring. In 2003, the year prior to trial, Yellow Cab taxis amounted to 40% of the entire taxicab fleet in Houston. That year, 1.6 million Yellow Cab trips were dispatched in Houston. Yellow Cab had contracted with three agencies serving the disabled and dispatched 650,000 calls to them in the 12 months preceding trial. In addition, Yellow Cab had solicited and obtained contracts with 600 companies to use voucher accounts, resulting in 645,000 calls. Each of Yellow Cab's taxis logs 60,000 to 65,000 miles a year servicing the Houston area.

#### (4) Instances of actual confusion

While there was no direct survey evidence of the effect of Yellow Cab's yellow trade dress on consumers, there was indi-

rect evidence of consumer confusion. The City of Houston official with responsibility for taxi operations, Blanton Daniels, testified that customers associated yellow cabs with Yellow Cab and that, if that same cab color scheme were to come before him again for approval it would not be approved because of the potential for confusion in the public. Because of the likelihood of confusion to the consuming public he had "gone to the length of putting a moratorium on the color yellow." Daniels further testified, "I think a person walking out to get a cab might be fooled. It could happen." Finally, he testified that, stepping out of his own role, "I can see where a person would look at a yellow car and if it's a cab, they were automatically going to assume it's Yellow Cab."

Although none of the factors cited above is sufficient by itself to establish the necessary link in the minds of consumers between a product and its source, viewing the foregoing evidence in the light most favorable to Yellow Cab, I would hold that the evidence of secondary meaning, taken as a whole, is legally sufficient to support the jury's implied finding with respect to Jury Question No. 1 that Yellow Cab established a secondary meaning for the use of the color yellow as its trade dress.

### Factual Sufficiency of Evidence of Secondary Meaning

Safe Cab also contends, however, that, viewed neutrally, the evidence was factually insufficient to support the jury's finding that Yellow Cab established a secondary meaning for its predominantly yellow trade dress, i.e., "it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain,* 709 S.W.2d at 176.

Safe Cab reminds us that the absence of an objective consumer survey is a significant hindrance to satisfying the high standard of proof of secondary meaning. *See Vision Ctr. v. Opticks, Inc.,* 596 F.2d 111, 119 (5th Cir.1979). It points to evidence that Yellow Cab did not conduct any consumer interviews or perform any consumer surveys to determine the effectiveness. Nor was there any direct evidence that consumers were confused between Yellow Cab and Safe Cab. Moreover, it points out that many other cab companies in the Houston area had used the color yellow.

Yellow Cab responds that it did produce some evidence of actual customer confusion through Daniels, the person in charge of taxi operations for the City of Houston. It also responds that there was evidence that the use of predominantly yellow cabs by other taxi operators was a recent phenomenon, that the City of Houston did not monitor the use of color by its licensees after the license was issued, and that the City of Houston had placed a moratorium on issuing further licenses for the operation of yellow cabs.

I cannot say that the evidence was so weak or the jury's implied finding on secondary meaning in support of its answer to Jury Question No. 1 was so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *See Cain,* 709 S.W.2d at 176. I would hold, therefore, that the evidence was factually sufficient to support the jury's implied finding in response to Question No. 1 that Yellow Cab had established a secondary meaning for the use of the color yellow.

I would overrule Safe Cab's fourth and fifth points of error.

### Factual Sufficiency of Evidence of Likelihood of Confusion

In response to Question No. 3, the jury responded that Safe Cab's use of the color yellow on its taxi caused a likelihood of confusion. In its sixth issue, Safe Cab contends that the evidence was factually insufficient to support the jury's finding.

Likelihood of confusion is a question of fact that is reviewed for clear error. *Sunbeam Prods.*, 123 F.3d at 257. The likelihood of confusion is determined with respect to the product's typical buyer. *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 389 n. 26 (5th Cir.1977); *see also Pro Hardware, Inc. v. Home Ctrs. of Am., Inc.*, 607 F.Supp. 146, 152 (S.D.Tex.1984). The likelihood of confusion is determined by application of the "digits of confusion" test. *Sunbeam Prods.*, 123 F.3d at 257. The factors weighed include "(1) similarity of the two products; (2) identity of retail outlets and purchasers; (3) identity of advertising media; (4) strength of the trademark or trade dress; (5) intent of the defendant; (6) similarity of design; (7) actual confusion; and (8) degree of care employed by consumers." *Id.*[2] "Proof of actual confusion is not a prerequisite, and no single factor is dispositive of the likelihood of confusion." *Id.; see also Taco Cabana Int'l, Inc. v. Two Pesos, Inc.* 932 F.2d 1113, 1118–19 (5th Cir.1991), *aff'd*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). However, a showing of actual confusion is highly persuasive as to the likelihood of confusion. *Sun Banks of Fla., Inc. v. Sun Fed. Savs. & Loan Ass'n*, 651 F.2d 311, 319 (5th Cir.1981); *Pro Hardware*, 607 F.Supp. at 152.

*(1), (6) Similarity of the two products and of design*

Like Yellow Cab, Safe Cab operated taxis that serve customers in the Houston area in transit between city airports and hotels. Yellow Cab presented evidence that Safe Cab painted its taxi with a yellow color nearly identical to Yellow Cab's. Indeed, the two cabs could be distinguished only if they were side-by-side in broad daylight. Moreover, the front views were very similar, and both Yellow Cab's and Safe Cab's taxis were rolling advertisements, although Safe Cab's taxi had its own name and telephone number printed on the side.

*(2) Identity of retail outlets and purchasers*

Because it had only one taxi, Safe Cab serviced only airports and hotels. All Houston cabs are required by City ordinance to charge the same fare, and, at airports and hotels, most patrons take the next cab in line. There was evidence, however, while these services were the same, Yellow Cab was much larger, used a dispatcher, and was able to offer more services.

*(3) Identity of advertising media*

Both Yellow Cab's and Safe Cab's taxis were rolling advertisements. However, in addition, Yellow Cab promoted yellow in

---

**2.** The jury instruction was not challenged by Safe Cab. The jury was instructed to consider 10 factors:

1. The similarity between the parties' products or services;
2. The strength of the YELLOW CAB'S trade dress;
3. The similarity between the parties' trade dress;
4. The identity of the advertising media used;
5. SAFE CAB'S intent;
6. The identity of customers and retail outlets;
7. Evidence of actual confusion;

8. The degree of care exercised by typical purchasers of the product or service';
9. Any previous relationship between the parties; and
10. The notoriety of YELLOW CAB'S trade dress.

No one of these factors is necessarily conclusive, but the consideration of each should be weighed in light of the total evidence produced at trial. You are instructed that YELLOW CAB need not produce evidence on all or even a majority of these factors. You are further instructed that no one factor is dispositive.

its marketing, purchased large advertisements in the Yellow Pages, was active in charities, and used a promotional vintage car and Hummer. There is no evidence that Safe Cab did any advertising other than using its taxi as a rolling advertisement. However, Safe Cab also used a receipt form almost identical to Yellow Cab's.

### (4) Strength of trade dress

Blanton Daniels, the person charged with taxi regulation for the City of Houston, testified that Yellow Cab had greater name recognition than any other cab business in Houston. Moreover, Yellow Cab established that it was the senior user of the color yellow for cabs in Houston, an area it had serviced since the 1940's, that it provided over 1,200,000 rides a year to customers, that it promoted the color yellow in substantial advertising in a variety of media, and that it was the dominant provider of taxi services in the Houston area. Nevertheless, approximately 20 cab companies other than Yellow Cab were operating yellow-colored taxis in Houston in 1993, the year Daniels began working at the agency. However, the City had placed a moratorium on the issuance of new permits to yellow-colored taxicabs a year prior to trial, and Daniels testified that he would not issue any more permits for yellow cabs because of the likelihood of confusion.

### (5) Intent of the defendant

There was no evidence of direct intent on the part of Safe Cab to infringe Yellow Cab's trade dress. However, both owners of Safe Cab had previously worked at Yellow Cab, chose a virtually identical color for their cab, used the cab as a rolling advertisement, and used nearly identical receipt forms.

### (7), (8) Actual confusion and degree of care employed by consumers

There was no direct evidence that any consumer had actually confused Safe Cab with Yellow Cab. However, there was indirect evidence of confusion between yellow-colored cabs and Yellow Cabs. Daniels testified that customers had associated the concept of a yellow cab with Yellow Cab and that, if the cab color scheme were to come before him again for approval it would not be approved because of the potential for confusion in the public. He also testified, "I think a person walking out to get a cab might be fooled. It could happen." Because of the likelihood of confusion to the consuming public he had put a moratorium on the color yellow. Finally, he testified that he would not confuse the two because of his long experience, but "I can see where a person would look at a yellow car and if it's a cab, they were automatically going to assume it's Yellow Cab."

In sum, Yellow Cab produced evidence of likelihood of confusion with respect to each of the relevant factors with the exception of direct evidence of actual confusion, including evidence of virtually identical color, design, geographic area, and services to the extent Safe Cab offered services, as well as indirect evidence of confusion of other yellow cabs with Yellow Cab. The fact that Yellow Cab had a much larger fleet, provided more services, or used additional types of media to advertise its services does not lessen the impact of the nearly identical color, design, use of advertising, and services offered by Safe Cab to the extent Safe Cab advertised or offered taxi services at all. Countervailing evidence, however, showed that a number of other yellow cabs had been operating in Houston for a period of time before a moratorium was placed on the issuance of new licenses for taxi services using yellow cabs.

I would hold that the jury's finding of actual confusion in response to Jury Question No. 3 was not so against the over-

whelming weight of the evidence as to be manifestly wrong and unjust. Moreover, even had the evidence not supported the jury's finding of actual confusion, proof of actual confusion is not a prerequisite for a finding of likelihood of confusion; nor is any single factor dispositive of the likelihood of confusion. *Sunbeam Prods.*, 123 F.3d at 257.

I would overrule Safe Cab's sixth point of error.[3]

## CONCLUSION

For the foregoing reasons, I would affirm the judgment of the trial court.

---

**3.** In its second point of error, Safe Cab argues that the trial court erred in entering judgment for Yellow Cab because the jury did not find an element of its Texas common-law unfair competition claim, namely irreparable harm. Because I would hold that Yellow Cab established trade dress infringement under the Lanham Act, I would not reach this issue.