**Opinion issued May 16, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-07-00898-CV

———————————

## MICHAEL FRANCIS PALMA, Appellant

## V.

## HOUSTON INDEPENDENT SCHOOL DISTRICT AND LINEBARGER GOGGAN BLAIR & SAMPSON, LLP, Appellees

On Appeal from the 61st District Court
Harris County, Texas
Trial Court Case No. 2006-14382

## MEMORANDUM OPINION

Appellant Michael Francis Palma appeals from a judgment (1) awarding $2,559.10 in 2006 property taxes jointly to the Houston Independent School

District[1] ("HISD"), Harris County, the City of Houston, and Houston Community College System and (2) a take-nothing judgment on his amended counterclaim[2] against HISD and Linebarger Goggan Blair & Sampson, LLP ("Linebarger").[3] The only parties Palma identifies as appellees are HISD and Linebarger.[4] We affirm.

Palma discusses numerous issues in his brief that do not appear to directly relate to the $2,559.10 in 2006 property taxes or the dismissal of the counterclaim. As we must, we limit our review to (1) allegations in Palma's brief that the trial court committed reversible error, if those allegations were preserved pursuant to

---

[1] HISD sued Palma as "Houston Independent School District, for itself and on behalf of Harris County Education District." Palma also sued the Harris County Appraisal District and Jim Robinson, and the trial court granted a plea to the jurisdiction and dismissed them. The clerk's record does not reflect how Harris County, the City of Houston, and Houston Community College System became parties, and the Harris County Education District is not mentioned in the final judgment. No question regarding the propriety of the parties to the trial court's final judgment is before us.

[2] HISD originally sued Washington Mutual Bank, FA, Wells Fargo HomeMortgage, and JPMorgan Chase Bank as lienholders. Palma originally counterclaimed against the banks. The banks do not appear in the written final judgment, which was rendered after trial on the merits and contains a Mother Hubbard clause. *See N.E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex. 1966).

[3] This appeal has been the subject of several contests regarding Palma's indigency, and briefing on the merits was finally completed on December 2012. The 2012 amendments to Texas Rule of Appellate Procedure 20 should prevent future prolonged delays in resolving indigency questions.

[4] Because Palma does not identify Harris County, the City of Houston, and Houston Community College System as appellees, the award of $2,559.10 in 2006 property taxes is unchallenged on appeal as to those three parties to the trial court's final judgment.

2

Texas Rule of Appellate Procedure 33.1(a) and are contained in the appellate record (the clerk's record and reporter's record) and (2) fundamental error. Accordingly, we do not address the portions of Palma's brief that do not directly relate to what the trial court actually did or reach the merits of allegations of error that were not preserved at trial and are not documented in the appellate record, which include arguments made for the first time on appeal, statements of Palma's understanding of the law, and rhetorical questions posed to this Court. In doing so, we adhere to our proper role in the judicial system, which precludes this Court from a de novo review of the underlying case. Finally, we deny Palma's motion that we certify the following advisory questions to the Supreme Court of Texas:

a. What is the definition of the term of art "located in this state" in 11.001 and 11.002 of the Tax Code?

b. Is a Natural Person liable for a property tax under any chapter of the Tax Code when the property is not in business or when a Natural Person is not specifically listed in the [T]ax [C]ode?

c. Does the act of "taxation" on a Natural Person or his property that is neither in business, nor producing income put the Natural Person in a state of peonage or involuntary servitude to the state and its political subdivisions?

**Discussion**

Unpreserved issues

We begin by listing the issues raised in Palma's brief that were not preserved:

3

1. The trial court denied him due process during the pretrial conference by the following statements:

> **THE COURT:** The law is actually not admitted as evidence at trial.
>
> **MR. PALMA:** But it can be referenced?
>
> **THE COURT:** It can be referenced to the court but not the jury. I'll tell the jury what the law is.

No objection was made.

2. The trial court denied him due process, as demonstrated by the following voir dire discussion:

> **JUROR:** Mine's not a medical issue. Just with people not paying taxes. I have to pay mine and I pay mine on time. I have a type of a problem with it, people not paying their taxes.
>
> **THE COURT:** Are you juror 15?
>
> **JUROR:** Fifteen.
>
> **MR. PALMA:** May I say something, your Honor?
>
> **JUROR:** I'm a single mom, too. And I've raised my kids for 11 years. And I pay my taxes.
>
> **MR. PALMA:** Mine – okay. The case is about not the fact that I didn't pay. In fact, Mr. Rider will admit, and you'll hear, that I did pay.
>
> **JUROR:** You didn't pay for three years.
>
> **MR. PALMA:** I paid it in '03. I paid it in '04. And I paid it in '05 directly to the law firm. Each year. They decided to send it back. The case is not about if I should pay or not. The case is

4

about: Number one, why did they send it back?  That's really it.  But I did pay it.  I just want you to understand that.

**JUROR:** I thought it was you didn't pay for three years.  You were delinquent on your taxes.

**MR. PALMA:** No.

**JUROR:** Then why were they going after you, if you didn't pay?

**MR. PALMA:** Because they sent the money back.  That's what the case is about.

**THE COURT:** Wait.  Wait.  Before you leave: Do you feel now, after discussing this, that you cannot serve or you can?

**JUROR:** I feel like I already have a prejudice just because of the fact that, you know, people have all these sad – sad songs, stories and stuff like that.  And I've done it.  And I'm, you know – and I've had to work and, you know, that kind of stuff.  And I just already have a prejudice.

**THE COURT:** All right.  And you are Juror 15?

**JUROR:** Uh-huh.

**THE COURT:** All right.  Thank you, ma'am.  Thank you.

**(Juror excused from the courtroom.)**

**(Open court.)**

**THE COURT:** So, 15 is struck.

No due-process violation complaint was raised at trial.

3.  His due-process rights were violated by the Harris County Tax Assessor-Collector sending him a flyer entitled "We're Here To Help Don't Let Your Taxes Remain Delinquent"; and this "threat" to sell the property during the trial rendered

5

that tax void. The record does not reflect that this issue was preserved in the trial court.

4. His claims that taxation of non-income producing property violates federal statutes concerning peonage and involuntary servitude. *See* 18 U.S.C. §§ 1581 (2000), 1584 (2008). Under this issue, Palma specifically states, "It is now time to say, conclusively, that ownership of private non-business property by a natural person or when held in trust for that natural person is an inherent right that is reaffirmed by the [C]onstitution and case law and cannot be mandatorily taxed." The record does not reflect that this issue was preserved in the trial court.

5. He "believes that this court would agree that non-business property that is not rendered cannot be taxed regardless if owned by a 'person' or 'natural person' unless voluntarily rendered." In support of this argument, Palma cites to Tax Code section 22.01(a)-(d) which provides as follows:

> (a) Except as provided by Chapter 24, a person shall render for taxation all tangible personal property used for the production of income that the person owns or that the person manages and controls as a fiduciary on January 1. A rendition statement shall contain:
>
> (1) the name and address of the property owner;
>
> (2) a description of the property by type or category;
>
> (3) if the property is inventory, a description of each type of inventory and a general estimate of the quantity of each type of inventory;

6

(4) the physical location or taxable situs of the property; and

(5) the property owner's good faith estimate of the market value of the property or, at the option of the property owner, the historical cost when new and the year of acquisition of the property.

(b) When required by the chief appraiser, a person shall render for taxation any other taxable property that he owns or that he manages and controls as a fiduciary on January 1.

(c) A person may render for taxation any property that he owns or that he manages and controls as a fiduciary on January 1, although he is not required to render it by Subsection (a) or (b) of this section.

(d) A fiduciary who renders property shall indicate his fiduciary capacity and shall state the name and address of the owner.

TEX. TAX CODE ANN. § 22.01(a)-(d) (West Supp. 2012). Palma contends there are no "rendering forms" for private real property.

Again, the record does not reflect that this issue was preserved in the trial court.

6. He argues there is a difference between a "constitutional tax" and an "administrative tax." Without citation to authority, Palma states that a "constitutional tax" must be collected by an "oathed official" and an "administrative tax" must be collected by a "bonded official." He further argues that a "constitutional tax" may only be paid with gold or silver coin (citing U.S. CONST. art. I, § 10, cl. 2), not with federal reserve notes.

The record does not reflect that this issue was preserved in the trial court.

7

7. He contends that land conveyed by a land patent is not subject to control by the State except under the conditions described in *Severance v. Patterson*:

> Limitations on property rights may be by consent of the owner, state condemnation with payment of just compensation, appropriate government action under its police power (such as addressing nuisances), sufficient proof of use by persons other than the owner that creates an estoppel-based right to continuing use (easements) or pre-existing limitations in the rights of real property owners that have existed "since time immemorial," in the words of the Texas Open Beaches Act (OBA).

370 S.W.3d 705, 710 (Tex. 2012). Palma argues that otherwise patented land may not be involuntarily controlled and that the State lacks jurisdiction to tax severed real property. If the State does attempt to enforce a tax, then Palma argues that is an unreasonable seizure (U.S. CONST. amend. IV), an unconstitutional taking (U.S. CONST. amend. V), and an unconstitutional violation of substantive due process (U.S. CONST. amend. XIV, § 1). The record does not reflect that this issue was preserved in the trial court.

Accordingly, we hold that Palma has not preserved any of the complaints discussed in numbers 1-7 for appellate review. *See* TEX. R. APP. P. 33.1(a)(1) (requiring complaint to have been made to trial court in order for complaint to have been preserved for appeal).

We overrule each of these issues.

8. Two other issues are mentioned in Palma's "statement of case and issues presented": (1) a question, "Once an amount due, alleged debt/tax, has been paid to

8

a third party collector, and returned by said collector, is the debt/tax discharged?," and (2) a complaint that the trial court did not make findings of fact and conclusions of law. Neither of these last two issues is discussed in the argument section of Palma's brief, and the record does not reflect that they were preserved in the trial court, e.g., the clerk's record contains no request for findings of fact and conclusions of law as required by Texas Rule of Civil Procedure 296. *See* TEX. R. APP. P. 33.1(a)(1) (preservation of error); TEX. R. APP. P. 38.1(i) (requiring briefs contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Howeth Invs., Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 902 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (declining to reach, for lack of adequate briefing, appellate challenge lacking citation to authority and sufficient legal analysis).

We overrule both of these issues.

Preserved issues

1. The trial court did not grant a continuance:

**THE COURT:** But the case is actually in trial at this time. You are in trial at this time in my court. And we're continuing the trial–recessing–until Wednesday, September 19th, 2007, at which time I'll notify you when we're going to proceed.

Sir?

**MR. PALMA:** Again, I'd like to state for the record that I object about this. It's against medical advice. I'm requesting from the

9

court both the oath of office, of Mr. John Donovan, and his bond.

**THE COURT:** All right. The matter is proceeding to trial. Okay. See you all next week, then.

Palma did not provide sufficient cause supported by affidavit as required by Texas Rule of Civil Procedure 252. We overrule this issue.

2. The trial court erred in submitting an issue in the charge on a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p (West 2009 & Supp. 2012). During the charge conference, the trial court denied a question on Palma's counterclaim under the FDCPA because the unpaid taxes are not a "debt" as defined by FDCPA section 1692a(5): "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* at § 1692a(5). By its plain terms, the FDCPA applies solely to the collection of consumer debt, not taxes. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 401–02 (3rd Cir. 2000) (stating FDCPA inapplicable to collection of property taxes); *Beggs v. Rossi*, 145 F.3d 511, 512–13 (2d Cir. 1998) (same); *cf. Hassan v. Greater Houston Transp. Co.*, 237 S.W.3d 727, 731 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Kiefer v. Cont'l Airlines, Inc.*, 882 S.W.2d 496, 502 (Tex. App.—

Houston [1st Dist.] 1994), *aff'd,* 920 S.W.2d 274 (Tex. 1996)) (stating that although Texas state courts interpret federal law independently, they "typically seek guidance from among the decisions of the lower federal courts" and treat such decisions "with respectful consideration").

On appeal, Palma primarily cites to an attorney-general opinion as his authority that a tax can be considered a debt. *See* Tex. Att'y Gen. No. Op. GA-0518 (2007). This opinion, however, does not discuss the FDCPA's definition of "debt." Other citations later in his brief that do not discuss the FDCPA are to Local Government Code section 262.0276, Tax Code section 26.012, a 1959 Fifth Circuit opinion that predates the 1978 enactment of the Act, a 1992 Austin Court of Appeals opinion discussing the state franchise tax, and two other attorney-general opinions. TEX. LOC. GOV'T CODE ANN. § 262.0276 (West 2005); TEX. TAX CODE ANN. § 26.012 (West Supp. 2012); *Rochelle v. City of Dallas*, 264 F.2d 166 (5th Cir. 1959); *Wilburn v. State*, 824 S.W.2d 755 (Tex. App.—Austin 1992, no writ); Tex. Att'y Gen. Op. Nos. JC-0087 (1999), MW-0416 (1981). These citations are inapplicable to Palma's FDCPA argument. In the absence of appropriate citations to authority, as required by Texas Rule of Appellate Procedure 38.1(i), we decline to construct Palma's argument for him. We overrule this issue.

11

**Conclusion**

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.